**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Senate in an Order Dated Jan. 3, 1979.

Answered Jan. 3, 1979.

## ANSWER OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Article VI, section 3 of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, respectfully submit the following reply to the questions propounded to us by the Honorable Senate on January 3, 1979, which were received by us on January 3, 1979.

The Justices of the Supreme Judicial Court of Maine have historically shown a conscientious desire to answer questions propounded to them by the executive or legislative departments of government pursuant to Article VI, section 3 of the Constitution of Maine.[1] The Justices have recognized, however, that upon receipt of questions from one of the other branches of government, it is first their constitutional duty to investigate with care whether in the given situation the Constitution denies them the right to answer the questions propounded. In making that investigation the Justices have been keenly aware that the provision of the Maine Constitution empowering them to give advisory opinions to the other branches represents an unusual and therefore limited exception to two overriding principles binding upon the judiciary. First, the Constitution of Maine in Article III expressly declares the foundational doctrine of separation of powers; the executive, legislative, and judicial departments of government, and the powers thereof, are strictly separated.[2] Second, by an otherwise universal rule the judicial power may be exercised only in an actual case and controversy; that is, only in a concrete fact situation involving adversary litigants who have an appropriate interest in developing the relevant facts and arguing the applicable legal principles. In light of those principles the federal government and all but a few states do not permit advisory opinions at all.

Recognizing the extraordinary nature of advisory opinions, the draftsmen of our Maine Constitution, in 1819, following the model of the Massachusetts Constitution of 1780, empowered the Justices of the Supreme Judicial Court to render such opinions only "upon important questions of law" and only "upon solemn occasions"[3] and only "when requested by the Governor, Council, Senate or House of Representatives."[4] Even when the Justices are constitutionally empowered to render an advisory opinion, that opinion has no precedential value and no conclusive effect as a judgment upon any party, and is not binding upon even the individual Justices rendering it in any subsequent litigated matter before their Court.[5]

Turning from those general principles to the questions propounded to us on January 3, 1979, we regretfully conclude that constitutional limitations on our power to advise another branch of government in nonlitigated matters prevent us from answering. If we were to address and express an opinion on the merits of those questions, we would in several respects do violence to the limitations imposed upon us by the Consti-

---

1. Article VI, section 3 reads as follows:
   "Section 3. The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives."

2. Article III, entitled "Distribution of Powers," reads as follows:
   "Section 1. The powers of this government shall be divided into three distinct departments, the legislative, executive and judicial.
   "Section 2. No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted."

3. While the phrase "solemn occasion" is not expressly defined in the Constitution, it has been often interpreted, usually in negative fashion, in various Opinions of the Justices in both Maine and Massachusetts.

4. The Council was eliminated as an authorized requesting body by Amendment XCIV to the Maine Constitution, effective November 18, 1964.

5. *Martin v. Maine Savings Bank,* 154 Me. 259, 147 A.2d 131 (1958).

tution of Maine as previously construed on numerous occasions.

Although the Senate, a body constitutionally authorized to request advisory opinions, has propounded the questions before us, the Senate has no function or duty to perform in regard to the subject matter of the questions, namely, the election of the Attorney General. The Attorney General is chosen neither by the Senate nor by the House nor by a joint session of the Senate and House. Rather, under the Maine Constitution, Article IX, section 11, the Attorney General is chosen "by joint ballot of the *Senators and Representatives in convention.*" (Emphasis added) Thus, the Senate has asked us questions in regard to a function constitutionally committed not to the Senate, but to the convention of those individuals who have qualified as Senators and Representatives. The Constitution does not empower that convention to address questions to the Justices in regard to its essentially political duty of electing the so-called constitutional officers, including the Attorney General. In a similar circumstance in 1933, the Justices advised the Senate that the Constitution of Maine did not authorize the Justices to answer questions propounded by the Senate that related to the powers and duties, not of the Senate, but of a proposed constitutional convention.[6] We must do the same here.

Furthermore, on its face, the statute that is the subject of the questions, 5 M.R.S.A. § 15(2), while imposing prohibitions and possible penalties upon any *former partner* of "a person who is currently a member of the classified or unclassified service employed by an executive agency," whoever such "person" is by the statute intended to be, imposes no prohibitions or penalties whatever upon that person himself. Thus, even if such "person" includes the Attorney General, the questions propounded do not relate to the legal qualifications of that

person to discharge the duties of that office. Rather, the questions seek the opinion of the Justices as to possible peripheral consequences on his former partners of such person's serving as Attorney General. Also, the outcome of the political process in the convention of Senators and Representatives in choosing among the potential candidates for the office is still hidden in the unknown future. Thus, whether the application of 5 M.R.S.A. § 15(2) will ever come in issue remains in the realm of speculation. As the Justices stated in a comparable situation, the questions here posed are "at a stage yet too tentative, hypothetical and abstract to have achieved the 'live gravity' necessary for the existence of a 'solemn occasion'."[7]

While we recognize that some of those charged with the responsibility of choosing an Attorney General may feel inhibited in making a choice because of the circumstances narrated in the preamble to the questions propounded, this fact does not give rise to the constitutional occasion authorizing us to answer them. We find directly relevant the point made in 1975 by the Justices[8] in responding to questions propounded by the Governor, in which he asserted that "the questioned statement of policy by a majority of the Executive Council 'inhibit[ed] or prevent[ed]' his taking action . . . " to fill a vacancy on the Public Utilities Commission. There the Justices said that since the Governor nevertheless continued to have "unlimited statutory authority to nominate the candidate of his choice to fill the vacancy," the matter was one of "future and hypothetical concern until the Governor asserts his intention to nominate a person who does not meet the particular standards which the Governor understands the Council demands." By analogy, in the present situation the Senators and Representatives in convention still have unlimited constitutional authority to make their choice of an Attorney General.

---

**6.** *Opinion of the Justices,* 132 Me. 491, 167 A. 176 (1933). *See also Opinion of the Justices,* 147 Me. 410, 105 A.2d 454 (1952).

**7.** *Opinion of the Justices,* Me., 330 A.2d 912, 915 (1975).

**8.** *Opinion of the Justices,* Me., 339 A.2d 483, 492 (1975).

In this regard it adds nothing to the Justices' constitutional power that, as narrated in the preamble to the questions propounded, one of the candidates for Attorney General has announced his personal decision, for whatever reasons may motivate him, to refuse to accept election as Attorney General if doubt persists as to the applicable scope of 5 M.R.S.A. § 15(2). As we have already explained, whether or not that statute has applicability to former partners of the Attorney General does not bear on the legal qualifications of the person chosen as Attorney General to serve in that office. The personal decision of a candidate not to accept election as Attorney General for reasons which are unrelated to his legal qualifications to serve in that office must be deemed a matter essentially private and not sufficient to generate the "solemn occasion" required by section 3 of Article VI of the Constitution of Maine.

Finally, at their root, all of the questions seek from the Justices an interpretation of an existing statute. This creates grave doubts as to the existence of a solemn occasion. First, the Legislature in any event may by amendatory enactment eliminate any ambiguity it finds in an existing statute. Such amendment would have the force of law.[9] An advisory opinion has no such force. It is merely the opinion of the individual Justices, not the binding decision of the Supreme Judicial Court sitting as the Law Court. Second, an advisory opinion interpreting an existing statute, though not having the force of law, may jeopardize private rights and public interests created by such statute.[10] As the Justices said in 1936, "any expression of opinion might prejudice the question before the arising of any occasion for its legal determination." [11]

For all these reasons, we conclude that we lack constitutional power, and therefore must respectfully decline, to answer the questions propounded.

VINCENT L. McKUSICK
Chief Justice

CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY
EDWARD S. GODFREY
DAVID A. NICHOLS
Associate Justices

---

9. *Opinion of the Justices,* Me., 355 A.2d 341, 390 (1976); *Opinion of the Justices,* Me., 339 A.2d 483, 488 (1975). *See also Answer of the Justices,* Mass., 374 N.E.2d 1345, 1346–47 (1978).

10. *Answer of the Justices,* Mass., 374 N.E.2d 1345, 1347 (1978). *See also Opinion of the Justices,* 125 Me. 529, 539, 133 A. 265, 270 (1926) (Answer of Dunn, J., later Dunn, C. J.).

11. *Opinion of the Justices,* 135 Me. 519, 522, 191 A. 485, 487 (1936).