2002 ME 169

**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Question Propounded by His Excellency, Angus S. King Jr., Governor of Maine in a Communication Dated Nov. 22, 2002. Answered Nov. 25, 2002.

## QUESTION PROPOUNDED BY THE GOVERNOR IN A COMMUNICATION DATED NOV. 22, 2002

To the Honorable Justices of the Maine Supreme Judicial Court:

Please accept my request for an Opinion of the Justices of the Maine Supreme Judicial Court pursuant to Article VI, § 3 of the Maine Constitution on a series of questions related to my legal authority regarding the evaluation of disputed ballots and the certification of election results.

There is no question that the ultimate authority to determine who will sit in the Legislature is the purview of the respective chambers. My questions arise in the course of exercising my constitutional duty to certify the *apparent* winners so they may be seated until such time as the Legislature determines the final winners.

In the election of November 5, 2002, there remain several contested races. Some have concluded recounts, while some are continuing recounts. An example in the House of Representatives is the House District 80 race between Stanley A. Moody and Elaine Fuller which has a final recount indicating one vote separates the candidates, with 10 ballots in dispute. The Senate race between Leslie Fossel and Christopher Hall for the Senate District 16 seat is particularly at issue because political control of the Senate hangs in the balance. In that race, the recount thus far has been narrowed to a 9 vote margin, with 63 votes disputed. The recount was finalized on Tuesday, November 19. The candidates have since agreed to meet on Monday, November 25 to reopen the recount in an attempt to further reduce the number of disputed ballots.

By virtue of Article IV of the Maine Constitution, I must take action to certify and summon the newly-elected Legislature by Tuesday, November 26. Article IV, Part 1, § 5 provides in regard to the House of Representatives that

> The Governor shall examine the returned copies of such lists and 7 days before the first Wednesday of December biennially, shall issue a summons to such persons as shall appear to have been elected by a plurality of all votes returned, to attend and take their seats.

Similarly, Article IV, Part 2, § 4 provides for the Senate that

> The Governor shall, as soon as may be, examine the copies of such lists, and at least 7 days before the said first Wednesday of December, issue a summons to such persons, as shall appear to be elected by a plurality of the votes in each senatorial district, to attend that day and take their seats.

These constitutional directives are implemented through the statutory provisions found at 21–A M.R.S.A. § 721, *et seq.* Relevant provisions are section 722 that describes how the Secretary of State must tabulate (list) the voting results; section 724 that describes how an election certificate or notice of apparent election (summons) is issued; and section 739 that provides the Governor may request that the Secretary of State produce the ballots for a given election.

My constitutional obligation with respect to the House is to summon the person who *appears* to have been elected by a plurality of *all votes returned;* with respect to the Senate I must summon the person who *appears* to be elected by a plurality of *votes in that senate district.* However, by Tuesday, November 26, I will be asked to certify and summon persons according to a Secretary of State tabulation that does not count disputed ballots in determining the apparent winners, and thus does not include all of the votes returned or cast in the districts. In the two races mentioned above, the number of disputed ballots are sufficient to change the outcome of the race. The law in 21–A M.R.S.A. § 739 further provides that I may request that the Secretary of State produce the ballots; the intention of that provision is not clear. In the face of these various provisions, I am confronted with the need to determine whether I am properly executing my constitutional responsibilities. I seek the advice of the Justices for an interpretation of my responsibilities so I may appropriately discharge my obligations under the law to ensure that I certify and summon the appropriate persons to appear in the Legislature.

I believe the questions propounded constitute important questions of law on a solemn occasion. In the case of House District 80, it is clear that I will be presented with a tabulation from the Secretary of State that does not include 10 disputed ballots which, if counted, would determine who received the plurality of votes in that district. In Senate District 16, additional recounting is expected. However, the opposing parties have demonstrated diametrically opposed views of both the process and outcome of that recount. The person I certify will take their seat as the critical 18th member of a body otherwise equally divided between 17 Republicans and 17 Democrats. That person will be a voting member of the Senate while that body determines who will be finally seated. I believe that the gravity of the determination of this seat, upon which control of the Senate hinges, creates an exigent circumstance. Timely advice on the exercise of my authority regarding certification of the apparent winners is critical given that any actions inconsistent with appropriate authority may disrupt the orderly establishment of the 121st Legislature.

Therefore I respectfully request an answer to the following questions:

1. Must the Governor accept the tabulation of the Secretary of State as the sole basis for his determination of what persons to summon and issue a certificate of election, or does the Governor have authority independent of the Secretary of State to determine the apparent winners of a legislative election?

2. Does the difference in language between Article IV, Part 1, § 5 and Article IV, Part 2, § 4 result in different responses to Question 1 as between the House of Representatives and the Senate?

3. Does 21–A M.R.S.A. § 739 provide the Governor with authority to evaluate disputed ballots in making a determination of who to certify as having apparently received a plurality of votes in a legislative election?

4. May the Governor certify and summon persons different from the persons the Secretary of State tabulates as the apparent winner of a legislative election?

I look forward to receiving your advice and counsel on these important questions of law. Thank you for your consideration.

Sincerely,

/S/ Angus S. King, Jr.

Governor

## OPINION OF THE JUSTICES

To His Excellency, Angus S. King, Jr., Governor of Maine:

[¶ 1] The Governor's questions ask us to determine whether he may or should evaluate certain ballots ·from the recent election for the Senate and the House of Representatives before summoning the apparent winners of that election. We respectfully respond, in summary, that neither the Constitution nor the statutes of the State of Maine confer any power, right, or authority upon the Governor to decide whether specific ballots cast in the election of State Senators and Representatives should be counted or. rejected in determining who is the "apparent" winner. Our analysis follows.

[¶ 2] Preliminarily it is important to understand the questions in context. The Governor recognizes, and we agree, that his role in the election process does not extend beyond his responsibility to summon such persons as shall appear to be elected by a plurality to attend upon their respective houses and take their seats. Following the seating at the Governor's summons, it is ultimately those members of the House and Senate who shall determine who has been elected to the Senate and the House of Representatives of the State of Maine. While we are not unmindful of the role that those summoned may play in determining the ultimate winners of the election, the questions presented here relate not to identifying who has been elected, but rather to determining who are the apparent winners sufficient to summon those persons to Augusta.

### SOLEMN OCCASION

[¶ 3] We turn then to the first issue that must be addressed: whether or not the questions that the Governor has delivered present us with a solemn occasion involving important questions of law. We conclude that they do.

[¶ 4] The doctrine of separation of powers, expressly articulated at Article III of the Maine Constitution, would normally dictate that we decline to answer questions presented by the Governor or the Legislature regarding their respective authority. ME. CONST. art. III, §§ 1–2; *Opinion of the Justices*, 396 A.2d 219, 223 (Me.1979).

[¶ 5] A narrow exception to this fundamental principle is created by Article VI, Section 3, which provides: "The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives." Thus, when we receive a request for an advisory opinion from either house of the Legislature or from the Governor, we first determine whether it is within the scope of our constitutional authority to provide advisory opinions only "upon important questions of law, and upon solemn occasions" pursuant to Article VI, Section 3 of the Maine Constitution. *Opinion of the Justices*, 682 A.2d 661, 663 (Me.1996).

[¶ 6] The following guideposts assist our determination on whether a "solemn occasion" has been presented on an "important question[ ] of law." First, the matter must be of "live gravity," referring to the immediacy and seriousness of the question. *Opinion of the Justices*, 709 A.2d 1183, 1185 (Me.1997). "A solemn occasion refers to an unusual exigency, such an exigency as exists when the body making the inquiry, having some action in view, has serious doubts as to its power and authority to take such action under the Constitution or under existing statutes." *Id.* In addition, the questions presented must be sufficiently precise that we can determine "the exact nature of the inquiry," *Opinion of the Justices*, 460 ·A.2d

1341, 1346 (Me.1982), and we will not answer questions that are "tentative, hypothetical and abstract." *Opinion of the Justices,* 330 A.2d 912, 915 (Me.1975).

■ [¶ 7] Although an advisory opinion "has no precedential value and no conclusive effect as a judgment upon any party," *Opinion of the Justices,* 396 A.2d at 223, such opinions provide guidance on present and future controversies. The Justices have previously stated:

> [T]he advice being given to guide the Governor in the performance of a public and constitutional function of government, and having been followed, public policy, at least, requires that strong and compelling reasons be presented before the Court sitting *en banc* will hold an act by the Chief Executive of this nature invalid when taken in pursuance of a construction of the organic law given upon request under the constitution by a majority of the Court.

*Fellows ex rel. Cummings v. Eastman,* 126 Me. 147, 151, 136 A. 810, 812 (1927).

■ [¶ 8] Thus, the determination that a question presents a "solemn occasion" is of significant import, and we will not find such an occasion to exist except in those circumstances when the facts in support of the alleged solemn occasion are clear and compelling.

■ [¶ 9] A solemn occasion has been presented on the facts before us. Following general elections of the members of the Maine Senate and House, the Secretary of State is required to tabulate the election returns and forward them to the Governor. 21–A M.R.S.A. § 722 (Supp. 2001). The Governor is then required by law to issue an election certificate or a notice of an apparent election to individuals who, from his examination of the returns, appear to be the winners of the respective elections by a plurality of the votes cast. ME. CONST. art. IV, pt. 1, § 5, pt. 2, § 4; 21–A M.R.S.A. § 724. Such an election occurred on November 5, 2002, and Governor King must accomplish his duty to issue a certificate or notice at least seven days before December 4, 2002. ME. CONST. art. IV, pt. 1, § 5, pt. 2, § 4.

[¶ 10] The Governor represents that the results of several races are disputed, that recounts have failed to resolve the disputes, and that the number of disputed ballots in more than one such race could determine the outcome of that race. He also represents that the tabulation by the Secretary of State will not include the disputed ballots among those counted.

[¶ 11] The essence of the questions can be summarized succinctly: in light of the Governor's uncertainty as to the import of 21–A M.R.S.A. § 739 (Supp.2001) and other pertinent constitutional and statutory provisions, does the Governor have the authority to investigate and "evaluate disputed ballots in making a determination" independent of the Secretary of State's tabulations. The inquiry is sufficiently precise for us to determine its exact nature, *Opinion of the Justices,* 460 A.2d at 1341, and involves constitutionally mandated conduct on the part of the Governor under circumstances where the Governor has "serious doubts as to [his] power and authority." *Opinion of the Justices,* 709 A.2d at 1185. Moreover, the Justices have historically found similar questions to present a solemn occasion. *E.g., Opinion of the Justices,* 143 Me. 417, 417–21, 88 A.2d 151, 151–53 (1948).

[¶ 12] We therefore conclude that the Governor's questions present a solemn occasion regarding important questions of law.

## CONSTITUTION AND STATUTES

[¶ 13] The relevant provision of the Maine Constitution relating to the role of

the Governor in the election of members of the House of Representatives is found in Article IV, Part 1, Section 5:

Fair copies of the lists of votes shall be attested by the municipal officers and the clerks of the cities and towns and the city and town clerks respectively shall cause the same to be delivered into the office of the Secretary of State forthwith. The Governor shall examine the returned copies of such lists and 7 days before the first Wednesday of December biennially, shall issue a summons to such persons as shall appear to have been elected by a plurality of all votes returned, to attend and take their seats. All such lists shall be laid before the House of Representatives on the first Wednesday of December biennially, and they shall finally determine who are elected.

The relevant provisions of the Maine Constitution relating to the role of the Governor in the election of members of the Senate are found in Article IV, Part 2, Sections 3–5:

**Section 3. Election of Senators; lists of votes delivered forthwith.** The meetings within this State for the election of Senators shall be notified, held and regulated and the votes received, sorted, counted, declared and recorded, in the same manner as those for Representatives. Fair copies of the lists of votes shall be attested by the clerks of the cities and towns or other duly authorized officials and sealed up in open meetings and such officials shall cause said lists to be delivered into the office of the Secretary of State forthwith.

**Section 4. Lists of votes examined by Governor; summons to persons who appear to be elected.** The Governor shall, as soon as may be, examine the copies of such lists, and at least 7 days before the said first Wednesday of De-

cember, issue a summons to such persons, as shall appear to be elected by a plurality of the votes in each senatorial district, to attend that day and take their seats.

**Section 5. Determination of Senators elected; procedure for filling vacancies.** The Senate shall, on said first Wednesday of December, biennially determine who is elected by a plurality of votes to be Senator in each district. . . . .

[¶ 14] The statute referred to in the Governor's question, 21–A M.R.S.A. § 739, reads in pertinent part:

On request, a municipal clerk or the Secretary of State, or both, shall produce any ballots or incoming voting lists in their custody before the Governor, either branch of the Legislature, any legislative committee or a court of competent jurisdiction.

### HISTORICAL BACKGROUND

[¶ 15] Although the constitutional provisions regarding election of the members of the Senate and House of Representatives have been amended several times, the requirement that each house determines who has been elected to it has remained constant. The role of the Governor to examine the copies of the lists of votes provided to him by the Secretary of State and to summon to the respective houses persons who appear to have been elected has remained unchanged with respect to the Senate since the adoption of the original Maine Constitution in 1819, and with respect to the House since 1864.

[¶ 16] Speaking to the limited role of the Governor and the then-existing Executive Council, the Justices said in 1845:

It is presumed the returns alone, are to be examined by the Governor and Council in regard to senatorial elections. If any error occurs, by being so guided, it

will be corrected by the senate, who are constituted judges generally of their own elections.... [T]he returns are conclusive upon the Governor and Council in regard to senatorial elections ....[1]

*Opinion of the Justices,* 25 Me. 567, 569 (1845). A few years later the Justices said: "The Governor and Council are only authorized to ascertain who appear to be elected Senators, and have no power to determine who are elected. That power is entrusted to the Senate alone, and it must determine whether those appearing upon the 'lists' to have been elected, were elected and had the qualifications required for Senators." *Opinion of the Justices,* 35 Me. 563, 572 (1854).

[¶ 17] Beginning in the 1850s, the Legislature enacted several statutes defining the role of the Governor and Council in examining the lists of votes. For example, a statute gave the Governor and Council the authority to correct errors in the returns in county elections. R.S. ch. 78, § 5 (1857). The Justices stated that this authority was narrowly limited, *Opinion of the Justices,* 64 Me. 588, 590 (1875), and that it did not extend to senatorial elections, *Opinion of the Justices,* 64 Me. 596, 598 (1875). An extension of this statute to other elections, including legislative elections, purported to give the Governor and Council the authority to count votes and hear testimony, P.L. 1877, ch. 212, but the Justices stated that this statute did not give the Governor and Council the authority to reject ballots, *Opinion of the Justices,* 70 Me. 560, 566–67 (1880).

[¶ 18] The nineteenth-century opinions on this topic were summed up in a 1924 opinion by a minority of Justices as follows:

What is the nature of the duties which the Governor and Council perform in determining the result of elections? ... [T]hey were almost entirely ministerial, and the Governor and Council were in no sense Judges of elections and had no authority to hear testimony outside the records and returns forwarded by the several town clerks except as the Legislature had expressly authorized it in connection with the determination of the meaning of the returns or in showing that the records did not correspond with the returns.

*Opinion of the Justices,* 124 Me. 453, 494, 126 A. 354, 373 (1924).

[¶ 19] A significant statement on the Governor's authority in the last century came in a contested House election in 1948. The relevant statute, R.S. ch. 5, § 50 (1944), authorized the Governor and Council to "count and declare for any person all votes appearing by the returns to have been intentionally cast for him" and hear testimony to determine the voters' intent. The Governor and Council asked the Justices whether they should count certain disputed ballots. The response in the *Opinion of the Justices* is relevant here:

[T]he authority and power of the Governor and Council in respect to the election of a Representative to the Legislature are defined and limited by ... the Constitution of this State. Under the Constitution the House of Representatives of the Legislature is the sole judge of the elections and qualifications of its own members. R.S., 1944, Chap. 5, Sec. 50 recognizes the controlling force of these constitutional provisions by limiting its application, in determining the

1. The lists of votes are also referred to as "returns" in some of the Opinions of the Justices and in statutes. *E.g.,* 21–A M.R.S.A § 711 (Supp.2001). In contrast to the lists, which are delivered from the towns and cities to the Secretary of State, ballots remain in the custody of the municipality unless a recount is triggered. *Id.* §§ 698(2–A), 737–A.

election of a Representative to the Legislature, to the examination and correction of returns. Neither the Constitution nor any statute confers right, power or authority on the Governor and Council to decide whether any ballots cast in an election of a Representative to the Legislature shall be counted or rejected. 143 Me. at 421–22, 88 A.2d at 153–54. The Justices emphasized this point eight years later when they advised the Governor and Council to certify to the United States Congress the apparent winner of an election without examining or considering ballots then in dispute. *Opinion of the Justices*, 152 Me. 212, 218–219, 142 A.2d 532, 535 (1956). The prohibition against gubernatorial examination of ballots addressed in that Opinion of the Justices applies equally to disputed races in the Maine Senate and House of Representatives.

[¶ 20] In 1975, the Legislature removed the Governor's statutory authority to correct the returns. P.L. 1975, ch. 621, § 7; P.L. 1975, ch. 771, § 202. Presently there exists no statute explicitly giving the Governor the power to correct returns or recount ballots.[2]

[¶ 21] With that background, we proceed to the questions propounded.

### RESPONSES TO THE GOVERNOR'S QUESTIONS

**QUESTION 1:** Must the Governor accept the tabulation of the Secretary of State as the sole basis for his determination of what persons to summon and issue a certificate of election, or does the Governor have authority independent of the Secretary of State to determine the apparent winners of a legislative election?

[¶ 22] We answer Question 1 as follows. In the context of the facts presented here, the Governor must accept the tabulation of the Secretary of State as the sole basis for the determination of what persons to summon. The Governor does not have independent authority to examine and accept or reject ballots when determining the apparent winner. The Constitution gives the Governor the authority to examine copies of the lists of votes that have been delivered to the Secretary of State from the towns and cities. From an examination of the copies of the lists, which generate the Secretary of State's tabulation, the Governor then issues a summons to attend the session of the Legislature to those persons who appear to have been elected.

[¶ 23] In the 1948 and 1956 Opinions, the Justices said that even though the Legislature had purportedly conferred on the Governor the authority to correct returns by counting votes and hearing testimony, he had no authority to decide which ballots to count or reject. Therefore, because the Legislature has taken away even that purported authority to correct returns, nothing gives the Governor the authority to decide which ballots to count and which to reject in carrying out his responsibility to summon the apparent winners.

**QUESTION 2:** Does the difference in language between Article IV, Part 1, § 5 and Article IV, Part 2, § 4 result in different responses to Question 1 as between the House of Representatives and the Senate?

[¶ 24] We answer Question 2 in the negative. The difference in the language is without significance and makes no difference whatsoever in the Governor's role regarding the election returns. The Governor's role in examining Senate and House elections is the same, and the Governor treats the lists of votes identically.

---

**2.** We express no opinion as to whether such a statute would be constitutional.

**QUESTION 3:** Does 21–A M.R.S.A. § 739 provide the Governor with authority to evaluate disputed ballots in making a determination of who to certify as having apparently received a plurality of votes in a legislative election?

[¶ 25] We answer Question 3 in the negative. Section 739 does not give the Governor the authority to evaluate disputed ballots. Its sole function is to require a municipal clerk or the Secretary of State to provide ballots or voting lists to any of the authorities listed in that statute when those authorities make a request for the same. The statute does not confer any authority upon the Governor to examine or count ballots.

**QUESTION 4:** May the Governor certify and summon persons different from the persons the Secretary of State tabulates as the apparent winner of a legislative election?

[¶ 26] In the context of the questions presented and for the reasons stated above, we answer Question 4 in the negative.

/s/ LEIGH I. SAUFLEY
/s/ ROBERT W. CLIFFORD
/s/ PAUL L. RUDMAN
/s/ HOWARD H. DANA JR.
/s/ DONALD G. ALEXANDER
/s/ SUSAN CALKINS
/s/ JON D. LEVY