2004 ME 54

**OPINION OF THE JUSTICES of
the Supreme Judicial Court**

**Given Under the Provisions of Article
VI, Section 3 of the Maine
Constitution**

Supreme Judicial Court of Maine.

DATED March 29, 2004.
ANSWERED April 16, 2004.

STATE OF MAINE

SAUFLEY, Chief Justice.

## IN THE SENATE

WHEREAS, it appears to the Senate and the House of Representatives of the 121st Legislature that the following are important questions of law and that this is a solemn occasion; and

WHEREAS, the Constitution of Maine, Article VI, Section 3 provides for the Justices of the Supreme Judicial Court to render their opinions on such questions; and

WHEREAS, there is now before the 121st Legislature for its consideration Initiated Bill 4, L.D. 1893, Bill, "An Act to Impose Limits on Real and Personal Property Taxes"; and

WHEREAS, the initiated bill may have constitutional infirmities that can not be corrected by revision or amendment; and

WHEREAS, the initiated bill proposes broad changes to the laws of this State that would limit the ability of both state and local governments to raise revenues to support vital governmental functions; and

WHEREAS, these limitations, if constitutional, would require the Legislature and local governments to make dramatic changes to their budgets beginning with fiscal year 2004–05, and the Legislature is currently in the process of reviewing a supplemental budget bill for that fiscal year; and

WHEREAS, the Legislature must decide whether to enact the initiated bill as proposed or to put forth a competing measure to the initiated bill as authorized by the Constitution of Maine, Article IV, Part Third, Section 18; and

WHEREAS, the Attorney General has indicated in the attached opinion that there is a "substantial possibility" that key portions of the initiated bill violate the Constitution of Maine and there is substantial doubt about the effectiveness of remaining portions; and

WHEREAS, it is vital that the Legislature be informed as to the questions propounded in this order; now, therefore, be it

ORDERED, the House concurring, that, in accordance with the provisions of the Constitution of Maine, the Senate and the House of Representatives respectfully request the Justices of the Supreme Judicial Court to give the Senate and the House of Representatives their opinion on the following questions of law:

Question 1. If Initiated Bill 4 becomes law, would those provisions of the bill that require the calculation of property taxes based on "full-cash value" or "appraised value," as adjusted, violate the Constitution of Maine, Article IX, Section 8, which requires taxes on real and personal property to be assessed and apportioned equally and according to just value?

Question 2. Initiated Bill 4, in the part that proposes the Maine Revised Statutes, Title 36, section 361, proposes a severability clause. If your answer to Question 1 indicates that portions of the initiated bill are unconstitutional, would any of the initiated bill's provisions remain effective by virtue of Title 36, section 361 or Title 1, section 71, subsection 8?

ANSWER OF CHIEF JUSTICE SAUFLEY, JUSTICE DANA, JUSTICE CALKINS, AND JUSTICE LEVY

To the Honorable Senate and House of Representatives of the State of Maine:

[¶ 1] The Senate and the House of Representatives ask us for an advisory opinion addressing questions related to the constitutionality of Initiated Bill 4, L.D. 1893 (121st Legis.2004), "An Act to Impose Limits on Real and Personal Property Taxes." Specifically, we are asked to advise whether, if Initiated Bill 4 is enacted by the people, its provisions would require the assessment of real estate taxes in violation of Article IX, Section 8 of the Maine Constitution.[1] We are also asked whether, if we answer the first question in the affirmative, any of the remaining provisions of the initiated bill would be effective by virtue of the severability provisions.

## I. SOLEMN OCCASION

[¶ 2] The Maine Constitution requires the justices of the Supreme Judicial Court to answer the questions propounded by the Senate and House if they are important questions of law and present a solemn occasion. ME. CONST. art. VI, § 3. Because not all of the justices agree that a solemn occasion exists, the undersigned justices briefly explain why we conclude that this is a solemn occasion.

[¶ 3] A solemn occasion exists when the questions are of a serious and immediate nature, *Opinion of the Justices*, 2002 ME 169, ¶ 6, 815 A.2d 791, 794; and the situation presents an unusual exigency, as when the Senate and the House have serious doubts as to action they can take, *Opinion of the Justices*, 709 A.2d 1183, 1185 (Me.1997). These factors are present.

[¶ 4] There is no question that the concerns of the Senate and House are

1. Article IX, Section 8 of the Maine Constitution requires, in pertinent part: "All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof."

serious. Initiated Bill 4 makes a major structural change in the valuation of property for property tax purposes, and it is the property tax upon which municipalities rely for revenue.

[¶ 5] Immediacy and an unusual exigency are likewise present. The Legislature has a constitutional duty to make a decision regarding Initiated Bill 4. That is, it must enact the bill, propose a competing measure, or decide to take no action. ME. CONST. art. IV, pt. 3, § 18, cl. 2. The Attorney General has given the Legislature an opinion that the valuation formula in Initiated Bill 4 is unconstitutional and that the severability provisions do not save the rest of the act. The Legislature has before it an immediate issue of whether to enact Initiated Bill 4 as written or propose a competing measure.[2] In light of these circumstances, we conclude that the requisite seriousness, immediacy and an unusual exigency exist.

[¶ 6] In the past, a majority of justices found that a solemn occasion existed when the House had a question about the constitutionality of an initiated bill that had not yet gone to the electorate. *Opinion of the Justices*, 623 A.2d 1258, 1261–62 (Me. 1993). There may be policy reasons in favor of amending the constitution to limit the use of advisory opinions from the justices when the questions involve an initiative, but because such amendment has not been enacted, the policy reasons do not allow us to decline to give our opinions. Former Chief Justice Emery indicated that although he considered Article VI, Section 3 of the Maine Constitution "undesirable," Lucilius A. Emery, *Advisory Opinions from Justices*, 2 ME. L. REV. 1, 1 (1908), because the provision remains in the constitution, "the Justices have no discretion in the matter. Their opinion is not

'requested'; it is 'required.' There is no suggestion that they may choose whether or not to give it." Lucilius A. Emery, *Advisory Opinion of the Justices, No. II*, 11 ME. L. REV. 15, 16 (1917).

[¶ 7] The members of the Maine Senate and the House of Representatives have told us that they need our opinion in order to undertake their responsibilities. We take them at their word that an opinion on the constitutionality of the initiated bill by the justices would assist and inform the Senate and House in their deliberations.

## II. RESPONSE TO QUESTION ONE

[¶ 8] The first question propounded by the Legislature is the following:

Question 1. If Initiated Bill 4 becomes law, would those provisions of the bill that require the calculation of property taxes based on "full-cash value" or "appraised value," as adjusted, violate the Constitution of Maine, Article IX, Section 8, which requires taxes on real and personal property to be assessed and apportioned equally and according to just value?

### A. Summary of Answer

[¶ 9] It is our opinion that the answer to this question is yes. For the reasons set out below, we conclude that those provisions of the initiative that base property taxes on "full-cash value" as defined by the proposed amendment to Title 36 M.R.S.A. § 351(4) (contained in Initiated Bill 4, L.D. 1893 (121st Legis.2004)) would violate the requirement of Article IX, Section 8 of the Maine Constitution mandating that "[a]ll taxes ... shall be apportioned and as-

---

2. For this reason, it is unnecessary to discuss whether there is sufficient time for the Legis-

lature to deal with the financial consequences if the initiated bill passes.

sessed equally according to the just value thereof." [3]

## B.  Standards Applied

■  [¶ 10] Because we are asked to give our opinion on the constitutionality of a proposed law, and because that opinion must be based on a reasonable anticipation of the Law Court's conclusion, should it be called upon to rule on the constitutionality of the initiative as enacted in the context of a live controversy, we begin our analysis by addressing the Law Court's standard of review of initiated laws.  In evaluating citizen initiatives, the Law Court applies the ordinary rules of statutory construction. *League of Women Voters v. Sec'y of State,* 683 A.2d 769, 771 (Me.1996) (citing *Opinion of the Justices,* 460 A.2d 1341, 1345 (Me.1982)).  Accordingly, Initiated Bill 4 carries a heavy presumption of constitutionality, and " '[b]efore [the bill] may be declared in violation of the Constitution, that fact must be established to such a degree as to leave no room for reasonable doubt.' "  *Id.* at 771–72 (quoting *Orono–Veazie Water Dist. v. Penobscot County Water Co.,* 348 A.2d 249, 253 (Me.1975)).

## C.  Analysis

■  [¶ 11] We must determine, therefore, whether the application of the "full-cash value" definition referenced in the Question is so contrary to the require-ments of fair and equal taxation as to leave no reasonable doubt that it violates the Maine Constitution.

[¶ 12] Full-cash value is defined in Initiated Bill 4 as follows:

> 4.  Full-cash value.  "Full-cash value" means the governmental entity's total assessed valuation of real or personal property as shown on the 1996–97 tax bill under "total value."  For newly constructed or newly purchased real or personal property that changes in ownership after the 1996–97 assessment, "full-cash value" means the appraised value.

L.D. 1893 (121st Legis.2004) (proposed as 36 M.R.S.A. § 351(4)).

[¶ 13] On its face, this definition creates two different bases for tax value purposes: one for property acquired by its current owner before the 1996–97 assessment and one for all property acquired after that assessment.  For taxpayers who purchased before the 1996–97 assessment, property taxes would be based not on fair market value, but on an assessed value from eight years ago.[4]  For those who acquired the property later, taxes would be based on a more recent appraised value.[5]  In other words, the bill provides for disparate treatment of property based not on the property's value but on the date of acquisition by the property's current owner.

---

3.  Reaching a similar conclusion, the Attorney General advised the Legislature's Joint Standing Committee on Taxation that key provisions of Initiated Bill 4 violate Article IX, Section 8 of the Maine Constitution.  Letter from G. Steven Rowe, Attorney General, to Members of the Joint Standing Committee on Taxation (March 23, 2004), at 1. In particular, the Attorney General concluded Initiated Bill 4 "will result in [property tax] assessments of similarly situated properties that vary based on how long the property has been owned and that do not reflect market value." *Id.* at 7.

4.  Although it is always possible that current fair market value and the 1996–97 assessed value may coincide, it would be mere coincidence.

5.  Because "appraised value" is unquestionably different from the 1996–97 assessed value, we need not determine whether appraised value means the value in the year acquired, or in each tax year.

[¶ 14] The Maine Constitution provides that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." ME. CONST. art. IX, § 8. In *Eastler v. State Tax Assessor*, the Law Court explained this provision as follows:

This constitutional provision establishes two requirements for a valid property tax: a valuation requirement and an apportionment requirement. Under the valuation requirement the tax-levying authority must determine the market value of the property. *See Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 389 (Me.1981) (" 'Just value' is the equivalent of 'market value.' "). Under the apportionment requirement the taxing authority must then apportion the tax equally according to the market value. The purpose of the two constitutional requirements is to equalize public burdens so that a taxpayer contributes to the entire tax burden in proportion to his share of the total value of all property subject to the tax. *See Opinion of the Justices*, 155 Me. 30, 47, 152 A.2d 81, 89 (1959).

499 A.2d 921, 924 (Me.1985).

[¶ 15] Thus, property taxes must be based on market value and must be apportioned equally according to that value. It bears highlighting that these requirements are established by the unequivocal terms of the Maine Constitution. ME. CONST. art. IX, § 8. They are neither statutorily nor judicially established.

[¶ 16] We are of the opinion that the proposed use of the 1996–97 assessed value as the tax base for long-owned property runs afoul of the requirement that a valid property tax must be based on market value.[6] Although flexibility in the methodology for determining market value is consistent with constitutional requirements,[7] the end result of any methodology must be a reasonable determination of "market value." Initiated Bill 4 creates an entire class of property owners whose taxes will not be based on market value, except in those undeterminable instances where the 1996–97 assessed value coincides by happenstance with the current market value.[8]

[¶ 17] It is also apparent that, by creating two separate non-market-value bases on which taxes will be founded, the initiated bill violates the requirement of equal apportionment. The Law Court recently discussed the equal apportionment requirement as it applied to municipalities in *Delogu v. City of Portland*, 2004 ME 18, 843 A.2d 33. The Court noted that Article IX, Section 8 "prohibits municipalities from engaging in unjust discrimination in the assessment of real estate taxes or the

**6.** Similarly, the Attorney General has opined that "[b]y requiring that property be assigned either the value stated on 1996–97 tax bills or, if acquired or newly constructed after that time, the appraised value at the time of construction or acquisition, the [initiated] bill results in a significant number of properties being valued at less than market value." Letter from Attorney General to Committee on Taxation, at 5.

**7.** The *Shawmut Inn* Court explained that "this Court has permitted the local assessors considerable leeway in choosing the method or combinations of methods to achieve just valuations. [It has] found acceptable as techniques to aid local assessors at least three standard appraisal methods of determining the market value of real property: (1) the 'comparative' or 'market data' approach, (2) the 'income' or 'capitalization' approach, and (3) the 'reproduction cost less depreciation' or 'cost' approach." *Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 390 (Me.1981).

**8.** We need not determine whether the phrase "appraised value" applied to recently purchased property would also violate the requirement that taxes be based on market value.

apportionment of real estate tax burdens." *Delogu,* 2004 ME 18, ¶ 12, 843 A.2d 33, 35 (citing *Ram's Head Partners, LLC v. Town of Cape Elizabeth,* 2003 ME 131, ¶ 9, 834 A.2d 916, 919). "A finding of discrimination is indicated when the municipal assessment system necessarily results in unequal apportionment." *Id.* (internal quotation marks omitted). The under or over assessment of one set of similarly situated properties will support a finding of unjust discrimination. *Id.*

[¶ 18] Application of the definition of "full-cash value" will result in just that— the disparate taxation of two similar or identical properties with the resulting unjust discrimination. The violation of the equal apportionment provisions of Article IX, Section 8 is clear.

## D. Answer to Question # 1

[¶ 19] Accordingly, we answer Question # 1 in the affirmative: If Initiated Bill 4 becomes law, those provisions of the bill that require the calculation of property taxes based on "full-cash value" or "appraised value," as adjusted, would violate Article IX, Section 8 of the Constitution of Maine, which requires taxes on real and personal property to be assessed and apportioned equally and according to just value.

## III. RESPONSE TO QUESTION 2

[¶ 20] The Second Question propounded by the legislature is the following:

Question 2. Initiated Bill 4, in the part that proposes the Maine Revised Statutes, Title 36, section 361, proposes a severability clause. If your answer to Question 1 indicates that portions of the initiated bill are unconstitutional, would

any of the initiated bill's provisions remain effective by virtue of Title 36, section 361 or Title 1, section 71, subsection 8?

## A. Summary of Answer

■ [¶ 21] It is our opinion that the answer to this question is also yes. The portions of the initiated bill that are unconstitutional are severable by virtue of 1 M.R.S.A. § 71(8) (Supp.2003) and proposed 36 M.R.S.A. § 361, and are not so integral as to invalidate the bill in its entirety. However, we express no opinion regarding whether individual provisions would be effective for the reasons set out below.[9]

## B. Analysis

[¶ 22] The Law Court begins a severability analysis by considering Title 1, section 71(8), which states:

The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity does not affect other provisions or applications which *can be given effect* without the invalid provision or application....

1 M.R.S.A. § 71(8) (emphasis added).

■ [¶ 23] In applying severability provisions, the Law Court has explained that if a provision of a statute is invalid, that provision is severable from the remainder of the statute as long as the rest of the statute "can be given effect" without the invalid provision, and the invalid provision is not such an integral part of the statute that the Legislature would only

---

**9.** Because we have been asked to address effectiveness in the context of the severability provisions of 1 M.R.S.A. § 71(8) (Supp.2003) and proposed 36 M.R.S.A. § 361, we do not address the claims asserted in the briefs regarding other possible constitutional infirmities.

have enacted the statute as a whole. *Bayside Enters., Inc. v. Me. Agric. Bargaining Bd.*, 513 A.2d 1355, 1360 (Me.1986); *Lambert v. Wentworth*, 423 A.2d 527, 535–36 (Me.1980); *Town of Windham v. LaPointe*, 308 A.2d 286, 292 (Me.1973). The Law Court considers the legislative purpose or purposes of the statute under consideration when examining questions of severability. *See Bayside Enters., Inc.*, 513 A.2d at 1360; *Lambert*, 423 A.2d at 535; *see also* 2 NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 44:3, at 552 (6th ed. 2001) ("[S]eparability is to be decided according to the legislative intent.").

[¶ 24] Thus, there are two components to the determination of the effectiveness of the remaining provisions of Initiated Bill 4. A court would have to decide: (1) whether the invalid provisions are so integral to the initiated bill that the entire act would have to be struck down, and (2) whether, individually, the remaining provisions can function and be given effect absent the invalid provisions.

■ [¶ 25] We begin, as does the Law Court, by focusing on legislative purpose in examining severability. When the provisions of a statute "are so related in substance and object that it is impossible to determine that the legislation would have been enacted except as an entirety, if one portion offends the Constitution, the whole must fall." *LaPointe*, 308 A.2d at 292; *see* 2 SINGER § 44:6, at 580 ("[W]here the invalid portion was the principal inducement for the passage of the statute, the whole statute must fail.").

[¶ 26] A statute's finalized legislative history ordinarily provides guidance as to its legislative purpose and whether any invalid provisions were integral to the statute's enactment. *See Bayside Enters., Inc.*, 513 A.2d at 1359; *Lambert*, 423 A.2d at 535. Typically, when the Law Court is asked to

undertake a severability analysis of an existing statute, there is a legislative record, House and Senate debate, or a detailed summary attached to the bill.

[¶ 27] The legislative history available to us in this instance is limited to the language of the bill itself and the Summary attached to the bill. As set forth in that Summary, Initiated Bill 4 contains at least three key features: the roll-back to 1996–97 valuation for long-time owners, L.D. 1893 (121st Legis.2004) (proposed 36 M.R.S.A. §§ 351(4), 352(1)); the limitation of "a maximum rate of 1% on the value of the property," L.D. 1893, Statement of Fact (121st Legis.2004); and a cap on annual property value increases of 2%, L.D. 1983 (proposed 36 M.R.S.A. § 353(2)).

[¶ 28] These features and other tax control related measures are evident in the language of the bill itself. Viewed as a whole, the initiative contains multiple separate goals and aims at creating a variety of tax related changes. It is significant that Initiated Bill 4 contains its own severability clause in proposed section 361, which states that "[i]f any portion, word, clause or phrase of this initiative for any reason is held to be invalid or unconstitutional by a court of competent jurisdiction, the remaining portions, clauses and phrases may not be affected, but shall remain in full force and effect." L.D. 1893 (121st Legis.2004). Given the standing presence of an existing severability provision at 1 M.R.S.A. § 71(8), this provision demonstrates a compelling intent to have the remaining sections stand on their own.

[¶ 29] With all of this in mind, and on the limited record available to us, we are of the opinion that the elimination of the roll-back provision and related base valuation mechanisms are not so integral to the initiative as to invalidate the bill in its entirety.

[¶ 30] We caution, however, that we do not opine on the individual effectiveness of each remaining provision. Absent a record of "a concrete, certain, or immediate legal problem" against which to assess each individual provision, our opinion regarding the provisions' effectiveness will be unduly speculative and hypothetical. *Wagner v. Sec'y of State,* 663 A.2d 564, 567 (Me.1995). Because of the complex nature of Initiated Bill 4, it is impracticable to render an opinion in the abstract regarding the effectiveness of its constituent parts.

C. Answer to Question # 2

[¶ 31] Accordingly, we answer Question # 2 in the affirmative: If the provisions of the bill examined in Question # 1 are unconstitutional as we have opined, those provisions are not so integral to the initiative as to render the entire bill invalid.

/s/ Leigh I. Saufley
Leigh I. Saufley
Chief Justice

/s/ Howard H. Dana, Jr.
Howard H. Dana, Jr.
Howard H. Dana, Jr.
Associate Justice

/s/ Susan Calkins
Susan Calkins
Associate Justice

/s/ Jon D. Levy
Jon D. Levy
Associate Justice

### ANSWER OF JUSTICE CLIFFORD, JUSTICE RUDMAN AND JUSTICE ALEXANDER

To the Honorable Senate and House of Representatives of the State of Maine:

[¶ 32] We do not concur in the opinion of our colleagues on the Court and pursuant to Article VI, Section 3 of the Maine Constitution, we, the undersigned justices of the Supreme Judicial Court, have the honor to submit our separate response to the questions propounded by the Senate and House of Representatives on March 29, 2004.

[¶ 33] Although we respect the seriousness of purpose and earnestness of concern by the Senate and the House of Representatives, which have caused them to propound these questions, we respectfully decline to answer the questions. Because the proposed law is yet to be voted on by the people, there is no matter of "live gravity" and no question of sufficient immediacy and seriousness to create a solemn occasion justifying our answer. It is important to distinguish between a question of live gravity and one that is of potential live gravity. Our constitution requires that we respond to the former and forbids us from responding to the latter.

[¶ 34] The doctrine of separation of powers, articulated in Article III of the Maine Constitution, dictates that we decline to answer questions presented by either the Legislature or the Governor regarding matters within their respective authority. ME. CONST. art. III, §§ 1–2; *Opinion of the Justices,* 2002 ME 169, ¶ 4, 815 A.2d 791, 794; *Opinion of the Justices,* 396 A.2d 219, 223 (Me.1979). A narrow exception to this fundamental principle of separation of powers is created by Article VI, Section 3, which provides that "[t]he Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives." ME. CONST. art. VI, § 3. When we receive a request for an advisory opinion pursuant to Article VI, Section 3, we must first determine whether it is within the scope of our limited constitutional authority to provide advisory opinions only "upon important questions of law, and upon solemn occasions."

*Opinion of the Justices,* 2002 ME 169, ¶ 5, 815 A.2d at 794; *Opinion of the Justices,* 682 A.2d 661, 663 (Me.1996).

[¶ 35] Prior opinions of the justices of this Court have articulated certain criteria to guide our determination of whether a "solemn occasion" has been presented on "important questions of law." First, the issue on any question presented must be one of "live gravity," referring to the immediacy and the seriousness of actions that the Legislature or the Governor must take and on which they seek guidance through an advisory opinion. *See Opinion of the Justices,* 2002 ME 169, ¶ 6, 815 A.2d at 794; *Opinion of the Justices,* 709 A.2d 1183, 1185 (Me.1997). In 1997, the justices of this Court stated that "[a] solemn occasion refers to an 'unusual exigency, such an exigency as exists when the body making the inquiry, having some action in view, has serious doubts as to its power and authority to take such action under the Constitution or under existing statutes.'" *Opinion of the Justices,* 709 A.2d at 1185 (quoting *Opinion of the Justices,* 95 Me. 564, 567, 51 A. 224, 225 (1901)).

[¶ 36] Opinions of the Justices propounded pursuant to Article VI, Section 3 of the Maine Constitution "are not binding decisions of the Supreme Judicial Court." *Opinion of the Justices,* 673 A.2d 693, 695 (Me.1996). Such an advisory opinion "has no precedential value and no conclusive effect as a judgment upon any party." *Opinion of the Justices,* 396 A.2d at 223. Even recognizing those limitations, such opinions are viewed as providing guidance on both present and future controversies. *Opinion of the Justices,* 2002 ME 169, ¶ 7, 815 A.2d at 795. Thus, in 2002, we observed that "the determination that a question presents a 'solemn occasion' is of significant import, and we will not find such an occasion to exist except in those circumstances when the facts in support of

the alleged solemn occasion are clear and compelling." *Id.* ¶ 8, 815 A.2d at 795.

[¶ 37] The above principles apply to our solemn occasion analysis any time questions are propounded pursuant to Article VI, Section 3, but we must examine the solemn occasion issue with particular rigor when, before the people vote, we are asked to give an advisory opinion regarding the constitutionality of an initiated bill. Pursuant to the Maine Constitution, Article IV, Part 3, Section 18, Clause 2, an initiated bill must either be enacted by the Legislature without change or it must be submitted, as a referendum question, to a vote of the people. *Wagner v. Sec'y of State,* 663 A.2d 564, 566 n. 3 (Me.1995); *Opinion of the Justices,* 673 A.2d at 697. Although, pursuant to the Maine Constitution, Article IV, Part 3, Section 18, Clause 2, the Legislature may submit a competing measure for consideration on the ballot, the initiated bill itself may not be withdrawn from the ballot or amended in any way, even if a constitutional infirmity in the initiated bill should be identified. *Opinion of the Justices,* 673 A.2d at 697.

[¶ 38] Like the initiated bill at issue in *Wagner,* Initiated Bill 4 may not be enacted, and its provisions may never become effective to create a live controversy with the immediate and serious impacts proper for consideration on judicial review. Short of a live controversy with immediate and serious impacts, creating the solemn occasion justifying our answering the propounded questions, we would be interfering with the political process and the people's right of franchise by offering an opinion on the constitutionality of Initiated Bill 4 before the electorate has expressed its view.

[¶ 39] The legislative findings submitted with the questions propounded to us suggest that there is an immediate and serious need for action and for our advice for

the Legislature to properly consider the fiscal year 2004–2005 budget and to properly determine whether to prepare and submit to the voters a competing measure. Based on these findings, our colleagues offer a non-binding opinion on the constitutionality of Initiated Bill 4 before the voters have had a chance to address it. After addressing the critical severability issue and offering a tentative opinion, they decline to indicate which provisions may remain effective and they conclude:

> Absent a record of "a concrete, certain, or immediate legal problem" against which to assess each individual provision, our opinion regarding the provisions' effectiveness will be unduly speculative and hypothetical. *Wagner v. Sec'y of State,* 663 A.2d 564, 567 (Me. 1995). Because of the complex nature of Initiated Bill 4, it is impracticable to render an opinion in the abstract regarding the effectiveness of its constituent parts.

[¶ 40] This supports our conclusion that there is no solemn occasion and that we shall not answer the question. Our most recent *Opinion of the Justices* stated that "we will not answer questions that are 'tentative, hypothetical and abstract.'" *Opinion of the Justices,* 2002 ME 169, ¶ 6, 815 A.2d at 795 (quoting *Opinion of the Justices,* 330 A.2d 912, 915 (Me.1975)). Separately, justices of this Court have indicated that the questions presented must be sufficiently precise for the justices to be able to determine "the exact nature of the inquiry." *Opinion of the Justices,* 155 Me. 125, 141, 152 A.2d 494, 501 (1959).

[¶ 41] The questions presented here require an analysis of intersecting laws, constitutional provisions, and facts. The complexity of the varying considerations renders it impossible for us to be confident of the law and other circumstances to such a degree as to "leave no room for reasonable doubt." *League of Women Voters v. Sec'y of State,* 683 A.2d 769, 771 (Me.1996). It would be far preferable for the constitutionality of Initiated Bill 4 to be determined in a fully litigated case.

[¶ 42] Should Initiated Bill 4 be enacted by the people, the first impact of its provisions would be applicable to municipal valuations for the tax year beginning April 1, 2005. 36 M.R.S.A. § 502 (Supp.2003). If Initiated Bill 4 were enacted in early November, there would be approximately five months between its adoption by the voters and its initial impact. That would allow time to address any constitutional concerns through judicial action in a properly litigated case and through legislative action by the next Legislature, convening in December 2004.

[¶ 43] It is clear that any assessment resulting from the initiated bill's provisions would have no direct impact on the fiscal year 2004–2005 State budget. Establishing valuations on April 1 of any year is but the first step in the assessment and collection of property taxes. Before taxes can actually be assessed, the mill rate must be set for each municipality based on budgets adopted by municipal, school, and county authorities. Any impact on state or local budgets as a result of the enactment of Initiated Bill 4 and the valuations for April 1, 2005, would not occur until the 2005–2006 State fiscal year, impacting a budget that is the responsibility of the next Legislature.

[¶ 44] The need for the Legislature to know if it should submit a competing measure to the voters is insufficient justification for us to answer the questions. Otherwise we would be required to answer any question submitted pertaining to an initiated bill. The material submitted by the Senate and the House does not suggest that the Legislature is in any way prevented from preparing and submitting a com-

peting measure to the voters, if it believes such is justified, based on its own public policy and legal analysis. The decision to submit alternative legislation is uniquely assigned to the Legislature by Article IV, Part 3, Section 18, Clause 2 of the Maine Constitution, and should not turn on a premature opinion by justices of this Court as to the constitutionality of the initiated bill before it may become law.

[¶ 45] Because there is no current controversy of live gravity, involving a matter with immediate and serious impacts, and because we must be particularly cautious when the matter in question must be presented to the electorate, regardless of any advice we give, we determine that a solemn occasion does not exist and we respectfully decline to answer the questions propounded to us.

/s/ Robert W. Clifford
Robert W. Clifford
Associate Justice

/s/ Paul L. Rudman
Paul L. Rudman
Associate Justice

/s/ Donald G. Alexander
Donald G. Alexander
Associate Justice