**PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION,**
Plaintiff

v.

**MAINE ATTORNEY GENERAL,**
Defendant

No. CIV.03–153–B–H.

United States District Court,
D. Maine.

May 3, 2004.

John J. Aromando, Catherine R. Connors, Pierce Atwood, Portland, Paul J. Ondrasik, Jr., Martin D. Schneiderman,

Steptoe & Johnson, Washington, DC, for Pharmaceutical Care Management Association, plaintiff.

Ronald W. Lupton, Andrew L. Black, Assistant Attorney Generals, Augusta, ME, John R. Brautigam, Falmouth, ME, for Main Attorney General, defendant.

## ORDER ON DEFENDANT'S MOTION TO AMEND THE ORDER OF PRE-LIMINARY INJUNCTION

HORNBY, District Judge.

The Attorney General has moved to amend the Preliminary Injunction entered by Judge Woodcock on March 9, 2004. He wants to narrow its temporary prohibition against enforcement of Maine's Unfair Prescription Drug Practices Act ("UPD-PA"), 22 M.R.S.A. § 2699 (2004). The Attorney General contends, first, that to the extent the injunction is based upon the UPDPA's probable unconstitutionality, it should be limited in scope to the specific subsection of the statute that Judge Wood-cock preliminarily found unconstitutional. That provision is section 2699(2)(G), requiring disclosure of "all financial terms and arrangements for remuneration of any kind that apply between the pharmacy benefits manager and any prescription drug manufacturer or labeler." Second, the Attorney General argues that to the extent the preliminary injunction is based upon probable ERISA preemption, it should be limited in scope to pharmacy benefit management contracts with ERISA-covered entities and even then should enjoin enforcement only of those specific subsections of the Maine UPDPA that Judge Woodcock discussed in his opinion. The plaintiff, Pharmaceutical Care Management Association ("PCMA"), resists the motion, arguing both that it is procedurally inappropriate and that Judge Woodcock's ruling requires that enforcement of the entire Maine UPDPA be held

in abeyance pending the outcome of this lawsuit.

■ The substance of the dispute involves what lawyers and judges call "severability"—whether some portions of a statute can survive when other portions are declared to be invalid. The issue raises questions of state law. The general rule, according to 1 M.R.S.A. § 71 (Supp. 2003), is that, unless it would be "inconsistent with the plain meaning," "[t]he provisions of the statute[ ] are severable.... If any provision of the statute[ ] ... is invalid, or if the application ... to any person or circumstance is invalid, such invalidity does not affect other provisions or applications which can be given effect without the invalid provision or application." The Maine Law Court has also addressed the issue. *See, e.g., Bayside Enter., Inc. v. Me. Agric. Bargaining Bd.*, 513 A.2d 1355, 1360 (Me.1986) (issue is whether "the remainder can be given effect without the invalid provision" or whether "the invalid provision is such an integral part of the statute that the Legislature would only have enacted the statute as a whole") (citations omitted); *Town of Windham v. La-Pointe*, 308 A.2d 286, 292 (Me.1973) ("Where it appears that the valid provisions would have been enacted, even if the invalid portion had been deleted, then the valid part may stand and the invalid may be rejected.... [W]hen the legislative provisions are so related in substance and object that it is impossible to determine that the legislation would have been enacted except as an entirety, if one portion offends the Constitution, the whole must fall.") (citations omitted). *See also Opinion of the Justices*, 2004 Me. 54, ¶ 24. Ultimately, the matter boils down to legislative intent (did the Legislature want the UPDPA to be enforced, even if it was limited in this drastically narrowed man-

ner?). *Id.* at ¶ 25 (the focus is on "legislative purpose").

 The basic principle underlying the Attorney General's motion is correct: a court's preliminary injunction preventing enforcement of a state statute should not go beyond the scope of the reasoning that found fault with the statute. If it does so, then it is manifest error and appropriate for the relief available under Fed.R.Civ.P. 59(e). The question, then, is whether the unproblematic parts of the Maine UPDPA can be separated for enforcement purposes from the portions that Judge Woodcock preliminarily found invalid. The Attorney General preserved (albeit barely) this severability issue in footnote seven of his Memorandum of Law in Opposition to PCMA's Motion for Preliminary Injunction.[1] Unfortunately, neither party gave the issue any substantial attention. Probably as a result, Judge Woodcock did not address the severability question in his ruling.

 As a newcomer to this case, I do not have sufficient information from the current briefs to understand whether or how the Attorney General's proposed truncated enforcement would work, given Judge Woodcock's specific holdings. I cannot determine, therefore, whether under the Maine severability statute and Maine Law Court principles I should permit certain sections of the statute to go into effect, should permit them to be applied against some but not all of the Association's members or should permit their enforcement as to contracts with some but not all of pharmacy benefit managers' clients.

If the Attorney General wishes to press the motion, therefore, I direct that he file a new brief that addresses explicitly the scope of statutory coverage that is left (numbers, dollars and/or percentages would be helpful) and how truncated enforcement would work[2]; any legislative history for 22 M.R.S.A. § 2699 that sheds light on the severability question, *see Opinion of the Justices*, 2004 Me. 54, ¶ 26; and the import of the relevant caselaw on severability. (It would also be helpful, as a matter of context, to understand the significance or importance of enforcement during the period before any likely final ruling.) The plaintiff may then respond accordingly.

It may be, however, that the parties will conclude that their time is better spent preparing the case for early and final disposition and addressing the severability issues there. The Attorney General shall file a new brief or inform the court that the motion is not being pressed no later than May 21, 2004.

SO ORDERED.

---

1. The footnote reads: "The provisions of Maine law are severable, and if one provision is found invalid, the remaining provisions remain in effect. 1 M.R.S.A. § 71 (the provisions of statutes and session laws are severable, and invalidity of any one provision as applied to any person or circumstance does not affect other applications or provisions)." Def.'s Mem. of Law in Opp'n to PCMA's Mot. for Prelim. Inj. at 12, n. 7 (Docket Item 12).

2. I will say preliminarily that my reading of Judge Woodcock's Order is that he found the entire Maine statute problematic under ERISA, and that he cited particular statutory portions as examples, without implying that the remainder would escape ERISA preemption. Thus, on this issue, the Attorney General may want to focus his attention on the significance, for enforcement purposes, of the non-ERISA sector.