**OPINION OF THE JUSTICES of the Supreme Judicial Court given under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by His Excellency
Angus S. King, Jr., Governor of Maine in a
Communication
Dated Nov. 22, 1996.
Answered Feb. 3, 1997.

---

QUESTIONS PROPOUNDED BY THE GOVERNOR IN A COMMUNICATION DATED NOVEMBER 22, 1996

To the Honorable Justices of the Maine Supreme Judicial Court:

Please accept my request for an Opinion of the Justices of the Maine Supreme Judicial Court pursuant to Article VI, § 3 of the Maine Constitution on a new series of issues arising in connection with the direct democracy provisions of Article IV, Part 3, § 18. I seek the advice of the Justices upon the options now available to the Executive and Legislature in the face of the mandate of Article IV, Part 3, § 18 that the competing measure on forestry issues be resubmitted to the electors at the next statewide election.

This request arises out of the same citizen-initiated legislation that gave rise to my July 8, 1996 and August 28, 1996 requests for an Opinion of the Justices on related issues, and the resulting Opinions dated July 24, 1996 and September 4, 1996. The Legislature referred the citizen-initiated legislation, "An Act to Promote Forest Rehabilitation and Eliminate Clearcutting" (Initiated Bill 4, Legislative Document 1819) to the electors

under Article IV, Part 3, § 18, along with a competing measure of the Legislature developed at a Special Session convened on September 5, 1996, "An Act to Implement the Compact for Maine's Forests," (Competing Measure Resolution Ch. 1) for vote by the electors at the November 5, 1996 statewide election.

At the November 5, 1996 election, the Maine voters gave the Competing Measure a plurality of 47.35%, casting 29.33% of the total votes for the Citizen-initiated legislation and 23.30% for the third option (rejection of both measures). It is not yet clear whether the Competing Measure will be submitted for consideration at the next statewide election (likely to be in November 1997), or at a special election to be scheduled by the Legislature as authorized by Article IV, Part 3, § 18.

A number of parties have requested that the Executive introduce legislation to the 118th Legislature to either enact the Competing Measure or an alternative measure to amend the Forest Practices Act dealing with the same subject matter. In addition, at least one legislator has already filed such a bill for consideration upon the convening of the new Legislature. Although mindful of the prior advice of the Justices in their July 24, 1996 and September 4, 1996 Opinions, I do require additional advice from the Justices on several new issues arising at this second stage of the referendum process in order to assure that all constitutional mandates are respected.

I believe that the questions of law presented below are important and that there does exist a solemn occasion as required by Article VI, § 3 of the Maine Constitution to authorize review of these matters by the Justices. These matters involve matters of first impression under the direct democracy provisions of the Maine Constitution. This situation presents circumstances similar to those found by the Justices in their July 24, 1996 and September 4, 1996 Opinions to justify a finding of a solemn occasion. Here, as in those Opinions, the Justices would be justified in finding that the Governor again confronts the need to resolve what legislation, if any, he should recommend to the Legisla-

ture pursuant to Article V, Part 1, section 9, within the limits imposed by the direct democracy provisions of the Maine Constitution. Furthermore, timely advice of the Justices is critical given that any legislative actions inconsistent with the mandates of direct democracy could disrupt the orderly administration of the second stage of the referendum process of section 18.

The Opinion of the Justices will be essential to my decision on whether to propose legislation to the 118th Legislature to deal with forestry issues, as further described below:

1. Does the 118th Maine Legislature have the authority to take direct legislative action to enact the Competing Measure (Competing Measure Resolution Ch. 1) that received a plurality of the vote at the November 5, 1996 election without the need to submit the legislation to a second election under Article IV, Part 3, § 18?

2. Does the 118th Legislature have the authority to "amend" the Competing Measure prior to the second election under Article IV, Part 3, § 18 in order to have the electors vote on the amended version in place of the original Competing Measure at the second statewide election?

3. Does the 118th Maine Legislature have the authority to adopt non-emergency legislation dealing with any of the same subject matter treated in the Competing Measure prior to the second statewide vote on the Measure referenced in Article IV, Part 3, § 18 of the Maine Constitution?

4. Does the 118th Legislature have the authority to adopt non-emergency legislation dealing with any of the same subject matter treated in the Competing Measure prior to the second statewide vote referenced in Article IV, Part 3, § 18, if that legislation becomes effective only in the event that the Competing Measure fails in the second statewide election, or alternatively, is effective only for the interim period prior to the second election?

5. If the Legislature determines to hold a special statewide election to satisfy the requirements of submission of the Competing Measure to the electors, may it schedule that election for any date after Mon-

day, January 6, 1997 (more than sixty days after the November 5, 1996 election), or alternatively, for the next regularly scheduled statewide election?

I look forward to receiving your advice and counsel on these important issues of law. Thank you for your consideration.

/s/ Sincerely,

/s/ Angus S. King, Jr.

/s/ Governor

## OPINION OF THE JUSTICES

To His Excellency, Angus S. King, Jr., Governor of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following response to the questions you propounded on November 22, 1996.

■ When this Court receives a request for an advisory opinion from either House of the Legislature or from the Governor, we must first determine whether we have the constitutional authority to answer the questions. *Opinion of the Justices,* 682 A.2d 661, 663 (Me.1996). We are permitted to provide an advisory opinion only "upon important questions of law, and upon solemn occasions ..." Me. Const. art. VI, § 3 (Supp.1995).

■ A solemn occasion exists only when we are presented with matters of "live gravity" in the sense that the body asking the question requires guidance in the discharge of its obligations. *Opinion of the Justices,* 674 A.2d 501 (Me.1996). A solemn occasion refers to an

unusual exigency, such an exigency as exists when the body making the inquiry, having some action in view, has serious doubts as to its power and authority to take such action under the Constitution or under existing statutes.

*Opinion of the Justices,* 95 Me. 564, 567, 51 A. 224, 225 (1901). The requesting body must be faced with the necessity of performing an official act that is of "instant, not past nor future, concern." *Opinion of the Justices,* 260 A.2d 142, 146 (Me.1969).

We have, in the past, refrained from answering questions from one branch of the government inquiring about the power, duty, or authority of another branch. *Opinion of the Justices,* 132 Me. 491, 497, 167 A. 176, 179 (1933). We have done so for two reasons. First, respect for the independence of the three branches of government underlies the constitutional restraint on our power to render advisory opinions. *Opinion of the Justices,* 95 Me. 564, 566, 51 A. 224, 225 (1901). And second, when one branch inquires as to the power, duty, or authority of a second branch, it is normally only the second branch that is in a "position to take immediate action on the answers." *Opinion of the Justices,* 460 A.2d 1341, 1349 (Me.1982). *See also* Comment, *The Validity of Restrictions on the Modern Advisory Opinion,* 29 Me. L.Rev. 305, 318 (1978).

Recently, in response to an unusual set of circumstances, we have twice answered questions presented by you inquiring indirectly into the power, duty, and authority of the Legislature. On July 8, 1996 you asked the following question:

"Does the Maine Legislature have the authority to enact a true 'competing measure' at a future Special Session and refer that competing measure for consideration by the electors in the November 1996 general election under Article IV, Part 3, § 18?"

*Opinion of the Justices,* 680 A.2d 444, 445 (Me.1996). In your July 8, 1996 communication you stated your intention to convene such a special session but only if the Legislature had the authority to act on your proposal. Because the answer would provide you with guidance in the discharge of your official obligations in convening the Legislature, we concluded that a solemn occasion existed and answered your question. After scheduling the special session, you were confronted with another occasion to ask our advice on an important question of law. Questions had arisen as to whether a ⅔ majority of the Legislature would be required in order to submit the competing measure to the voters. The Attorney General of Maine advised the President of the Senate by an opinion dated August 13, 1996, that only a simple majority

was required. Legislators indicated to you their intention to pose the question to the Justices as soon as the special session was convened. The special session was scheduled for September 5, 1996, and the referendum was scheduled for the November 5, 1996 general election. On August 28, 1996, just prior to the special session, you sought an advisory opinion on the following question:

> Is a ⅔ majority or a simple majority vote of the Legislature required to submit a bill as a competing measure to initiated legislation under Article IV, Part Third, Section 18(2) of the Maine Constitution, when the vote by the electors is scheduled to occur less than 90 days following legislative submittal?

*Opinion of the Justices,* 682 A.2d 661, 662 (Me.1996). Because the answer would, once again, provide you with guidance in the discharge of your obligations in convening the special session to consider your proposal and because waiting for a question from the Legislature would impose a delay that threatened to disrupt the scheduled referendum vote, we determined that a solemn occasion existed and answered the question.

At the special session, the Legislature approved the competing measure, the "Compact for Maine's Forests." Pursuant to Me. Const. art. IV, pt. 3, § 18 it was placed on the ballot along with the citizen initiative, "An Act to Promote Forest Rehabilitation and Eliminate Clearcutting", and a third option rejecting both. At the November 5, 1996 election the competing measure received a plurality of 47.35% of the votes. Pursuant to section 18, the competing measure must now be "submitted by itself" "at the next statewide election to be held not less than 60 days after" November 5, 1996. Me. Const. art IV, pt. 3, § 18.[1]

The questions now presented are prompted by a concern that this second stage in the referendum process could be disrupted by legislation that would either enact the competing measure or amend the Forest Practices Act prior to the second referendum.

You indicate that parties have requested that the Executive propose such legislation, and that at least one legislator has filed such a bill. You do not, however, indicate a present intention to propose specific legislation, and there appear to be no immediate decisions contemplated by you that depend on any answer we might provide. Moreover, at this stage, there is no pending legislative activity that poses a present or imminent threat of disrupting the referendum process. Unlike the past two occasions, the questions focus on the authority of the Legislature in circumstances that do not directly and immediately implicate the powers, duty, or authority of the Executive.

██ In these circumstances, the general rule requires us to decline to answer a request made by one branch of government for an advisory opinion regarding the power, duty, or authority of another branch. Although the questions pose important issues of law, no solemn occasion exists because no immediate action on the part of the Executive depends on the answers.

We do not suggest that the same or similar questions could not be posed in different circumstances by you or the Legislature. Consistent with the constitutional grant of our advisory power, we must at this time respectfully decline to answer Questions 1 through 5.

/s/ DANIEL E. WATHEN
/s/ DAVID G. ROBERTS
/s/ CAROLINE D. GLASS-MAN
/s/ ROBERT W. CLIFFORD
/s/ PAUL L. RUDMAN
/s/ HOWARD H. DANA
/s/ KERMIT V. LIPEZ

---

1. When there are competing bills and neither receives a majority of the votes given for or against both, the one receiving the most votes shall at the next statewide election to be held not less than 60 days after the first vote thereon be submitted by itself if it receives more than ⅓ of the votes given for and against both.
Me. Const. art IV, pt. 3, § 18.