2015 ME 27

OPINION OF THE JUSTICES
OF THE SUPREME JUDICIAL COURT

GIVEN UNDER THE PROVISIONS OF
ARTICLE VI, SECTION 3 OF THE MAINE CONSTITUTION

Docket No. OJ-15-1

_____

QUESTIONS PROPOUNDED BY HIS EXCELLENCY,
PAUL R. LEPAGE, GOVERNOR OF THE STATE OF MAINE

IN A COMMUNICATION

DATED JANUARY 23, 2015

ARGUED FEBRUARY 26, 2015

ANSWERED MARCH 10, 2015

_____

QUESTION PROPOUNDED BY THE GOVERNOR
IN A COMMUNICATION DATED JANUARY 23, 2015

To the Honorable Justices of the Supreme Judicial Court:

Please accept my request for an Opinion of the Justices of the Maine Supreme Judicial Court pursuant to Article VI, Section 3 of the Maine Constitution. I seek your advice upon important questions of law regarding the proper constitutional responsibility and relationship between the Chief Executive and the Attorney General pursuant to Article V, Part First, Section I, Article V, Part First, Section 12, and Article IX, Section 11 of the Maine Constitution, and 5 M.R.S. § 191.

Consistent with my duties, I have sought legal representation of state agencies by the Office of the Attorney General pursuant to 5 M.R.S. § 191. My questions arise in the face of the recent refusal by the Attorney General to represent a state agency in a lawsuit, an action which has led me to seriously doubt the actions I must take with respect to the Attorney General's assertion of authority over state litigation.

FACTUAL BACKGROUND

At issue is the legal representation refused by the Attorney General in the matter of *Mayhew v. Burwell*. Initially, this case was an administrative matter, a Medicaid State Plan Amendment ("SPA") request from the Maine Department of Health and Human Services ("Maine DHHS") to the United States Department of Health and Human Services ("U.S. DHHS"). In 2012, the Maine Legislature directed Maine DHHS to eliminate 19- and 20-year olds from Maine's Medicaid population, conditioned on Maine DHHS seeking and obtaining from U.S. DHHS an SPA making that change. *See* 2012 Me. Laws c. 657, § GG-1. Maine DHHS submitted the required SPA request to U.S. DHHS. The Office of the Attorney General, under Attorney General William Schneider, assisted Maine DHHS in that administrative case. The Office of the Attorney General also represented Maine DHHS with a related action in the U.S. Court of Appeals for the First Circuit, to force a timely answer from U.S. DHHS on the SPA request. The First Circuit denied that request as Maine DHHS had not yet exhausted its administrative remedies.

At that point, the Legislature elected Janet Mills to replace William Schneider as Attorney General. From that point forward, the Office of the Attorney General has refused to represent Maine DHHS in actions related to this SPA. The Attorney General refused to provide legal representation for the remainder of the administrative work before U.S. DHHS, leaving Maine DHHS to represent itself. In 2013, the U.S. DHHS denied Maine's SPA request. Maine DHHS petitioned for reconsideration, which was denied in January 2014. Intending to appeal the SPA denial to the First Circuit, Maine DHHS requested legal representation from the Office of the Attorney General, or outside counsel as an alternative. The Attorney General responded by refusing to provide representation because she concluded the matter was unlikely to succeed, but indicating she would consider authorization of outside counsel. A copy of the March 4, 2014 communication from the Attorney General is attached as Exhibit 1 for the Court's reference.[1]

In March 2014, the Attorney General authorized Maine DHHS's retention of outside counsel for the limited purpose of representation in the First Circuit appeal, and with a cap on legal fees. The money for the legal fees came from the Governor's discretionary account, not the budget of the Office of the Attorney General.

Using outside counsel, Maine DHHS filed its appeal of the SPA denial in *Mayhew v. Burwell.* After the appeal was filed, the Attorney General moved to intervene in the case to oppose Maine DHHS's position. The Attorney General was granted intervenor party status, and filed her brief in August 2014, in which she stated:

> The Attorney General of Maine strongly disagrees with the State DHHS, as a matter of law and public policy, and for that reason declined to represent the State DHHS, authorized outside counsel for the Department and successfully moved to intervene to represent the public interest.

Brief of Interested Party-Intervenor Attorney General of Maine, *Mayhew v. Burwell*, Case No. 14-1300 (Aug. 6, 2014) at 3. The First Circuit denied the

---

[1] Where the Attorney General has declined representation to Maine DHHS in this instance, DHHS waives no attorney-client privilege through disclosure of the pieces of correspondence from the Attorney General that are provided herein. This disclosure does not constitute waiver of the privilege belonging to Maine DHHS in any other matter.

appeal in November 2014. The Executive Branch intends to petition the U.S. Supreme Court for a writ of *certiorari*, which it must do by mid-February. Maine DHHS communicated to the Attorney General that it wished to retain outside counsel for the purposes of filing the petition. Despite the Attorney General's participation as a party in outright opposition to Maine DHHS in *Mayhew v. Burwell*, the Office of the Attorney General requested that the Executive Branch provide copies of outside counsel's bills and the estimate for the cost to do the petition, from which the Attorney General's Office would consider the request for outside counsel, and develop a legal fee cap to impose on the Executive Branch for the work to be performed. Maine DHHS refused to provide privileged narrative billing records, but provided amounts budgeted and paid to outside counsel instead. Maine DHHS also argued against the propriety of a fee cap. In a January 14, 2015 letter, the Attorney General's Office approved the retention request (a copy of that letter is attached as Exhibit 2 for the Court's reference).

At this juncture, especially in light of the Attorney General's opposition to Maine DHHS in the SPA appeal, I seriously question whether I must submit to the Attorney General's direction over state litigation.

With great deference, I respectfully submit to you that these questions represent the "solemn occasion" and "important questions of law" necessary to invoke your constitutional authority to issue advisory opinions under Article VI, Section 3 of the Maine Constitution. According to a 1997 Opinion of the Justices, "a solemn occasion refers to an unusual exigency, such an exigency exists when the body making the inquiry, having some action in view, has serious doubts as to its power and authority to take action…" *Opinion of the Justices,* 709 A.2d 1183, 1184 (Me. 1997). I request that you assist me in finding the appropriate legal path.

## QUESTIONS

1. If the Attorney General refuses to represent a State agency (or any other entity listed in 5 M.R.S. § 191) in a lawsuit, must the Executive Branch still obtain the Attorney General's permission to hire outside counsel to represent the agency in the suit?

Presently, the Department is faced with deadlines for submitting its petition for *certiorari* in *Mayhew v. Burwell.* The Office of the Attorney General has

consented to the retention of outside counsel for the limited purpose of generating a petition. The Attorney General's Office also has indicated that should a petition for *certiorari* be granted, Maine DHHS will have to return to obtain permission to retain outside counsel. Additionally, there is at least one other pending litigation matter in Cumberland County Superior Court, *Maine Municipal Association et al. v. Maine Department of Health and Human Services*, in which the Attorney General's Office has refused to represent Maine DHHS, and for which the Attorney General asserts Maine DHHS must continue at regular intervals to obtain permission to retain outside counsel.

I wish to know whether the Executive Branch may proceed with retaining outside counsel on its own terms in the absence of permission from the Attorney General. A requirement to request permission from the Attorney General implies that permission may be denied, which would leave the Executive Branch without legal representation and would deprive me, and the Executive Branch officers working at my direction, of the inherent and constitutional authority to carry out the policy priorities I set. I ask whether the Executive Branch may be left without representation or recourse to the courts to carry out Executive Branch policy priorities by a decision of the Attorney General, a constitutional officer chosen by the Legislature. May the Attorney General exercise *de facto* veto power over my differing assessment of the public interest, by prohibiting me from obtaining vindication from the courts of the public interest as I see it?

> 2. If the Attorney General intervenes to oppose a State agency in a lawsuit, must the Executive Branch still allow the Attorney General to direct that piece of litigation?

The Attorney General has intervened in *Mayhew v. Burwell* in order to oppose Maine DHHS. Especially in light of her status as an opposing party in the present case, it is my position that it is inappropriate for her to exercise control over this piece of state litigation. *Cf. Fitzgerald v. Baxter State Park Auth.*, 385 A.2d 189 (Me. 1978). This is not a situation where the Office of the Attorney General can create a Chinese wall between various assistant attorneys general who are representing distinct interests. In the present case, the Attorney General herself has decided to participate as a party in a lawsuit, while claiming veto authority over whether and to what extent her opposing party obtains representation of counsel. She has sought to dictate who may represent the Executive Branch and even to cap the legal fees for that work, even though the

payments do not come from her Office's budget. Her office has requested copies of privileged billing entries of the opposing party who paid the bills. I believe none of this is authorized when she is a party on the opposite side of a lawsuit the Executive Branch has deemed advisable in faithful execution of the directives of the Legislature and the policy judgments of the Executive Branch.

In light of the pressing deadline for filing a petition for a writ of *certiorari,* and the importance of proceeding in an unfettered fashion with obtaining appropriate outside legal counsel for that case as well as the *Maine Municipal Association* litigation, I request the Court provide its answers to these questions as promptly as the Court is able.

Sincerely,
/s/
Governor Paul R. LePage

OPINION OF THE JUSTICES

To His Excellency, Paul R. LePage, Governor of the State of Maine:

[¶1]  Pursuant to article VI, section 3 of the Maine Constitution, we have the honor of responding to Paul R. LePage, the Governor of the State of Maine, who seeks an advisory opinion from the Justices of the Supreme Judicial Court addressing questions related to the provision of legal representation for the Executive Branch when the Maine Attorney General has declined to represent the Executive Branch in specific litigation and has taken a position in opposition to the Executive Branch in that litigation.[1]

[¶2]  We invited input from the Governor, the Attorney General, and any interested person.  We received briefs from the Governor, the Attorney General, and several members of the public.  An oral argument was held on February 26, 2015, at which both the Governor and the Attorney General were heard through counsel.

[¶3]  After thoroughly considering the arguments and law on point, we provide our opinion regarding the questions presented by the Governor as follows:

Regarding Question One, we conclude that no solemn occasion has been presented, and we respectfully decline to answer Question One.

---

[1]  The questions posed seek our opinions as individual Justices of the Supreme Judicial Court.  *See* Me. Const. art. VI, § 3; *Opinion of the Justices*, 2012 ME 49, ¶ 4, 40 A.3d 930.  Because all participating Justices agree in the opinion expressed here, only one opinion is issued.

2

Regarding Question Two, we conclude that a solemn occasion has been presented, and, in our opinion, the answer to Question Two is "No."

## I. CONSTITUTIONAL, STATUTORY, AND COMMON LAW BACKGROUND FOR THE QUESTIONS

[¶4]  To consider either of the questions propounded, it is first necessary to examine the relationship between the Legislative and Executive Branches of government as they relate to the constitutional office of the Maine Attorney General.  *See* Me. Const. art. IX, § 11.

[¶5]  The Governor is vested with "[t]he supreme executive power of this State" by the Maine Constitution.  Me. Const. art. V, pt. 1, § 1.  In his role as the supreme executive, the Governor is required to "take care that the laws be faithfully executed."  Me. Const. art. V, pt. 1, § 12.  That responsibility will require the Governor, through his office or the offices of Executive Branch agencies—here specifically, the Department of Health and Human Services—to advocate and litigate before federal and state administrative agencies, the courts of Maine, and other federal and state courts.  As further explained below, representation in litigation will usually be provided through the "Attorney General or a deputy, assistant or staff attorney."  5 M.R.S. § 191(3) (2014).

[¶6]  The office of Attorney General, an office created by the Maine Constitution, is ordinarily filled "biennially by joint ballot of the Senators and

Representatives in convention." Me. Const. art. IX, § 11. Although the Governor has the authority to nominate and appoint various State officers, subject to confirmation, *see* Me. Const. art. V, pt. 1, § 8, the Governor does not appoint the Attorney General unless a "[v]acancy in said office occur[s] when the Legislature is not in session," Me. Const. art. IX, § 11.[2]

[¶7] "The Attorney General is the executive head of the Department of the Attorney General." 5 M.R.S. § 191(1) (2014). The Attorney General's authorizing legislation is found in title 5 of the Maine Revised Statutes, entitled "ADMINISTRATIVE PROCEDURES AND SERVICES." The Attorney General acts independently and is not explicitly a part of either the Legislative Branch, which is governed by article IV of the Maine Constitution and title 3 of the Maine Revised Statutes, or the Executive Branch, which is governed by article V of the Maine Constitution and title 2 of the Maine Revised Statutes. In this respect, the Attorney General is distinct from the other constitutional officers—the Secretary of State and the Treasurer of State. Although the Secretary of State and the Treasurer of State are also elected by the Legislature, *see* Me. Const. art. V, pt. 2, § 1; Me.

---

[2] If the vacancy does occur when the Legislature is not in session, the office "may be filled by appointment by the Governor, subject to confirmation as required by this Constitution for Justices of the Supreme Judicial Court." Me. Const. art. IX, § 11. That confirmation procedure requires that "an appropriate legislative committee comprised of members of both houses in reasonable proportion to their membership as provided by law shall recommend confirmation or denial by majority vote of committee members present and voting." Me. Const. art. V, pt. 1, § 8. "The committee recommendation shall be reviewed by the Senate and upon review shall become final action of confirmation or denial unless the Senate by vote of 2/3 of those members present and voting overrides the committee recommendation." *Id.*

4

Const. art. V, pt. 3, § 1, and their roles, like the Attorney General's, are governed by title 5 of the Maine Revised Statutes, *see* 5 M.R.S. §§ 81 to 90-T, 121-155 (2014), their offices are created and defined by article V of the Maine Constitution, the same article that establishes the "Executive Power" in the Governor. In contrast, the office of the Attorney General is created in article IX of the Maine Constitution, which is captioned, "General Provisions." *See* Me. Const. art. IX, § 11.

[¶8] The Attorney General therefore occupies an office that does not fall within any particular branch of government, although an Attorney General will always hold that office by virtue of some action by legislators and may hold that office because of a gubernatorial appointment made due to a vacancy arising when the Legislature is not in session. *See id.*

[¶9] The Maine Constitution does not define or describe the Attorney General's duties and authority. Instead, those duties and that authority are defined by statutes and common law. *See* 5 M.R.S. §§ 191-205 (2014); *Superintendent of Ins. v. Attorney General*, 558 A.2d 1197, 1199-1200 (Me. 1989). Here, the Governor's questions seek the interpretation of statutory—not constitutional—language.

[¶10]   The statute at issue establishes a duty in the Attorney General to provide legal representation for the State, including for heads of state departments or agencies that operate within the Executive Branch, in most circumstances:

> **Representation by Attorney General, deputies, assistants and staff attorneys.**  The Attorney General or a deputy, assistant or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of the officers are called into question, in all the courts of the State and in those actions and proceedings before any other tribunal when requested by the Governor or by the Legislature or either House of the Legislature.  *All such actions and proceedings must be prosecuted or defended by the Attorney General or under the Attorney General's direction.*
>
> . . . .
>
> **B.**   All legal services required by those officers, boards and commissions in matters relating to their official duties must be rendered by the Attorney General or under the Attorney General's direction.  The officers or agencies of the State may not act at the expense of the State as counsel, *nor employ private counsel except upon prior written approval of the Attorney General.*  In all instances where the Legislature has authorized an office or an agency of the State to employ private counsel, the Attorney General's written approval is required as a condition precedent to the employment.

5 M.R.S. § 191(3) (emphases added). The Governor's questions seek our interpretation of the highlighted passages in section 191(3) to address a situation in which the Attorney General declined to provide representation in litigation for an

6

Executive Branch agency, approved the employment of private counsel for the Executive Branch, and then intervened in the litigation as an opponent.

[¶11]  Before we can determine whether the Governor's questions present "solemn occasions" upon which we may opine as individual Justices in an advisory capacity, Me. Const. art. VI, § 3; *see Opinion of the Justices*, 2012 ME 49, ¶ 4, 40 A.3d 930, we review briefly the facts that generated the questions.

## II.  FACTS PRESENTED BY THE GOVERNOR

[¶12]  The questions presented arise from the Attorney General's refusal, after a request by the Executive Branch, to represent the Maine Department of Health and Human Services (the Department) in an ongoing administrative proceeding seeking approval from the United States Department of Health and Human Services (U.S. DHHS) of a proposed Medicaid State Plan Amendment. That refusal occurred when the Attorney General, acting within her authority, *see Superintendent of Ins.*, 558 A.2d at 1200, determined that she would not continue to represent the Department in that proceeding because of her office's "assessment that the appeal is moot and lacks substantial legal merit."

[¶13]  Upon the Attorney General's refusal to represent the Department, the Department requested the Attorney General's authorization to employ private counsel pursuant to section 191(3)(B).  The Attorney General authorized the Department to employ private counsel to represent the Department in an appeal

from the decision of the U.S. DHHS to the United States Court of Appeals for the First Circuit. The law firm retained to represent the Department agreed to a "fixed fee" or cap on the cost of representation, and the Attorney General's authorization was expressly limited to those terms. The legal fees for the Department's private counsel were paid from the Governor's discretionary account.

[¶14] Thereafter, the Attorney General sought and obtained intervenor status to oppose the position of the Department. The Attorney General has the authority to take a position that is contrary to that of the Executive. *See Superintendent of Ins.*, 558 A.2d at 1204 (holding that the Attorney General may oppose a state agency's position in litigation).

[¶15] The First Circuit affirmed the U.S. DHHS decision. *Mayhew v. Burwell*, 772 F.3d 80, 97 (1st Cir. 2014). The Department then requested authorization from the Attorney General—now opposing counsel—to continue to employ private counsel for the purpose of filing a petition for a writ of certiorari in the Supreme Court of the United States. The office of the Attorney General requested copies of counsel's bills and a cost estimate. A Deputy Attorney General approved the continued employment of private counsel based on the materials submitted, which were redacted to limit the disclosure of privileged information. The Deputy Attorney General approved the employment of counsel at the rates and estimated fees described by the firm and "estimate[d] the cost of

8

this phase of the litigation to be approximately $35,000, but in no event more than $50,000." The Deputy's letter provided that an additional cost estimate would be required if a writ of certiorari were granted.

[¶16] In anticipation of continued litigation, the Governor now asks whether he must submit to the Attorney General future requests to permit the Department to employ private counsel when the Attorney General has declined to represent it and whether the Attorney General may direct the Department's litigation by limiting the duration of representation or capping the fees that may be paid to private counsel from the Governor's discretionary account.

## III. SOLEMN OCCASION

[¶17] "The Justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives." Me. Const. art. VI, § 3. When the Governor or either house of the Legislature requests an advisory opinion of us, we must first determine whether a solemn occasion arises that confers on us the constitutional authority to answer the questions propounded. *Opinion of the Justices*, 2012 ME 49, ¶¶ 4-5, 40 A.3d 930.

[¶18] "A solemn occasion arises when questions are of a serious and immediate nature, and the situation presents an unusual exigency." *Id.* ¶ 5 (quotation marks omitted). "[W]e will not find such an occasion to exist except in

those circumstances when the facts in support of the alleged solemn occasion are clear and compelling." *Id.* (quotation marks omitted). "[W]e will not answer questions that are tentative, hypothetical and abstract." *Id.* (alteration in original) (quotation marks omitted). A solemn occasion exists when the question propounded "concern[s] a matter of 'live gravity' and 'unusual exigency,' which means that the body asking the question requires judicial guidance in the discharge of its obligations." *Id.* ¶ 6 (quoting *Opinion of the Justices*, 709 A.2d 1183, 1185 (Me. 1997)).

A.    Question One

[¶19]  The first question propounded by the Governor asks whether, once the Attorney General has declined to represent a state agency, it is necessary for the agency to seek permission to employ private counsel:

> If the Attorney General refuses to represent a State agency (or any other entity listed in 5 M.R.S. § 191) in a lawsuit, must the Executive Branch still obtain the Attorney General's permission to hire outside counsel to represent the agency in the suit?

The portion of the statute that generates this dispute is explicit and directly addresses the issue posed by the Governor's question. The statute provides, "The officers or agencies of the State may not act at the expense of the State as counsel, *nor employ private counsel except upon prior written approval of the Attorney General*." 5 M.R.S. § 191(3)(B) (emphasis added).

[¶20]  We discern several purposes for this provision.  The first purpose is fiscal.  Because the Legislature has allocated state funds for the creation and maintenance of the Department of the Attorney General, the use by any state agency of additional resources to employ private counsel would be unnecessary if the Attorney General and the attorneys within that office are available to provide representation.  Thus, the Legislature has required the officers and agencies of the State to consult with the Attorney General before employing private counsel.  The second purpose relates to the Attorney General's statutory responsibility to direct the litigation of state government.  *See* 5 M.R.S. § 191(3).  To fulfill that responsibility, the Attorney General must be consulted when the branches, or their officers or agencies, seek legal counsel for litigation.  *Id.*  Finally, the Attorney General has a statutory responsibility to provide legal advice to the branches of government.  *See* 5 M.R.S. § 195 (2014).  Requiring consultation before the hiring of private counsel provides members of government with the opportunity to receive legal advice and counsel from the Attorney General before proceeding in litigation.

[¶21]  Each of those purposes has been met in the matter before us.  The Department sought representation from the Attorney General, and the Attorney General provided legal advice.  Once it became clear that the Department and the Attorney General did not share the same view of the law, the Attorney General

determined that her office would not represent the Department in the litigation, and the Department sought and received authorization to employ private counsel.

[¶22] Each of the governmental offices at issue here has an independent responsibility and authority, created by Maine's constitution and statutes, to act in the interests of the people of Maine. The Governor has both the authority and the responsibility to pursue those actions that he determines to be necessary to execute the laws of the State of Maine faithfully. *See* Me. Const. art. V, pt. 1, § 12. The Governor's authority includes the authority to litigate in the courts and administrative agencies when necessary, including through Executive Branch agencies. *See id.*; 5 M.R.S. § 191(3). The Attorney General similarly has the authority and responsibility to act in the best interests of the people of Maine. *See Superintendent of Ins.*, 558 A.2d at 1199-1200; *Lund ex rel. Wilbur v. Pratt,* 308 A.2d 554, 558 (Me. 1973).

[¶23]   Thus, given the current structure of Maine's government, there is always the potential for differing positions in litigation.[3]   We are, however, unaware of any occasion upon which the Executive Branch—either the Governor or any state agency—has been denied approval to employ private counsel when the Attorney General declined to provide representation.   Specifically, the information provided by the parties indicates that there has been no occasion on which this Attorney General has denied a request to obtain private counsel submitted by this Governor or the Executive Branch under his authority.   Moreover, the Attorney General's office has continued to provide representation for the Governor and the Executive Branch agencies in other proceedings throughout the duration of the dispute regarding the proposed Medicaid State Plan Amendment.

[¶24]   Nor does the record report any such refusal by previous Attorneys General.   When we were presented with a related question in *Superintendent of*

---

[3]   Maine is the only state in which the Attorney General is elected by a majority vote of the Legislators in both houses.   *See* William P. Marshall, *Break up the Presidency?  Governors, State Attorneys General, and Lessons from the Divided Executive*, 115 Yale L.J. 2446, 2448 n.3 (2006).   In most states the Attorney General is elected by the people, *see, e.g.*, Cal. Const. art. V, § 11; Ill. Const. art. V, §§ 1, 2; Mass. Const. art. LXIV, § 1; Tex. Const. art. IV, §§ 1, 2, and in one state, the Attorney General is "appointed by the Judges of the Supreme Court," *see* Tenn. Const. art. VI, § 5.   *See generally* Marshall, 115 Yale L.J. at 2448 & n.3 (summarizing the manner in which the Attorney General is chosen in the states).

However, although the process for the election of the Attorney General in Maine is unique among the states, *see* Me. Const. art. IX, § 11, the potential that the Executive Branch and the Attorney General may take differing positions on policy and litigation is not unusual, either in Maine, *see, e.g.*, *Superintendent of Ins. v. Attorney Gen.*, 558 A.2d 1197 (Me. 1989); *Opinion of the Justices*, 343 A.2d 196, 198-99 (Me. 1975), or in other states, *see, e.g.*, *Riley v. Cornerstone Cmty. Outreach, Inc.*, 57 So. 3d 704 (Ala. 2010); *Sec'y of Admin. & Fin. v. Attorney Gen.*, 326 N.E.2d 334 (Mass. 1975); *Attorney Gen. v. Mich. Pub. Serv. Comm'n*, 625 N.W.2d 16 (Mich. Ct. App. 2000); *Pub. Util. Comm'n v. Cofer*, 754 S.W.2d 121 (Tex. 1988).

*Insurance v. Attorney General*, we declined to reach the issue that the Governor presents today: "We need not decide whether approval could be withheld for the employment of private counsel because of a disagreement over the public interest." 558 A.2d at 1200. That opinion was published in 1989. *Id.* at 1197. We are unaware of any occasion in the intervening years when approval has been withheld.

[¶25] Because there is nothing before us indicating that the Governor or the Department was deprived of private counsel when the Attorney General was not available, or that such a situation is likely to arise, no "unusual exigency" exists. *Opinion of the Justices*, 2012 ME 49, ¶ 6, 40 A.3d 930 (quotation marks omitted).

[¶26] In sum, because the Attorney General has not, to date, declined a request for private counsel in the pending matter or other matters, and because no one presents any evidence of such a denial at any time in Maine's recent history, Question One presents only a hypothetical question. *See id.* We must, therefore, respectfully decline to answer Question One because it does not present a solemn occasion upon which we will offer any opinion.

B. Question Two

[¶27] The second question propounded by the Governor addresses whether the Attorney General may continue to direct the Executive Branch's litigation when the employment of private counsel has been approved and the Attorney General has taken a position contrary to that of the Executive Branch in litigation:

> If the Attorney General intervenes to oppose a State agency in a lawsuit, must the Executive Branch still allow the Attorney General to direct that piece of litigation?

[¶28] Here, the Attorney General authorized the employment of private counsel to represent the Department in the First Circuit appeal with a reference to a cap on legal fees to be paid from the Governor's discretionary account.[4] After the First Circuit affirmed the decision of the U.S. DHHS to deny the request by the Department for a Medicaid State Plan Amendment, the Governor and the Department decided to petition the Supreme Court of the United States for a writ of certiorari.

[¶29] Before the Attorney General's office would approve the employment of private counsel for purposes of the petition for a writ of certiorari, it requested copies of private counsel's bills and an estimate of the cost of petitioning in anticipation of capping, or at a minimum recommending a cap on, the legal fees to be paid to private counsel. After reviewing estimates, a Deputy Attorney General approved the request for authorization to continue employing private counsel. It is in this context that the Governor asks whether the Attorney General may, when appearing in a matter in opposition to the Department, engage her office in

---

[4] Because Question Two specifically addresses those occasions when the Attorney General has taken a position in litigation that is contrary to that of the Executive Branch, we do not discuss, and do not reach, the separate questions that may be presented in the second case referenced in the Governor's briefs, in which the Attorney General has declined to represent the Executive Branch but has not participated as an opponent in the litigation.

providing fiscal oversight or other direction of the Department's private counsel. *See* 5 M.R.S. § 191(3).

[¶30]   This question does not present an abstract or hypothetical question. The Attorney General has, in fact, approved the employment of private counsel; the Attorney General has, in fact, intervened in opposition to the Governor's position; and the Attorney General has, in fact, required anticipated time and payment information from the Governor's private counsel as a prerequisite to approving the request for the continued employment of private counsel.

[¶31]   Although the Attorney General suggested at oral argument that this process was merely an "advisory" process and not a further approval of the employment of private counsel, the communications from the Attorney General and the Deputy Attorney General were not understood to be advisory by the Executive Branch.   Because the communications indicated that further approval was contingent upon review of private counsel's billing and time estimates before each next stage of the litigation, the Executive Branch understood the Attorney General to be directing the Executive Branch's litigation strategy through its oversight of the duration and cost of private representation.   *See id.*   In view of these differing understandings of what the law requires and authorizes in these circumstances, Question Two presents a question of live gravity that represents a

solemn occasion. *See Opinion of the Justices*, 2012 ME 49, ¶ 6, 40 A.3d 930. We therefore provide our advisory opinion on this question.

## IV. ADVISORY OPINION ON QUESTION TWO

[¶32] We are called upon here to interpret the statute through which the Legislature has required that the Attorney General "shall appear for the State" in litigation and that those "proceedings must be prosecuted or defended by the Attorney General or under the Attorney General's direction." 5 M.R.S. § 191(3).

[¶33] We recognize the independence of the Attorney General's office, *see Superintendent of Ins.*, 558 A.2d at 1199-1200, 1202, as well as the authority of that office to oppose the Executive Branch in litigation, *see id.* at 1204. This is neither new nor unique to the State of Maine. *See supra* n.3.

[¶34] It is our shared opinion, however, that, once the Attorney General approves the employment of private counsel for a state entity and opposes that entity in litigation, the Attorney General is no longer appearing for the state entity and therefore is no longer authorized to direct or manage that entity's litigation or strategy. *See* 5 M.R.S. § 191(3). We have found nothing in the Maine Constitution, Maine statutes, or Maine common law that requires or authorizes the Attorney General in such circumstances to review, audit, or oversee the specific duration of representation, the legal fees charged, or other aspects of the relationship between the state entity and private counsel.

[¶35]  Indeed, the Attorney General may agree that it would be inappropriate for her office to manage or control the litigation of the Executive Branch once her office has taken an opposing position in the litigation.[5]  The Attorney General and the Governor may, therefore, agree that the Attorney General is not authorized to provide "direction" for the Executive Branch's litigation, but disagree about whether the durational and financial review and limitations described in the communications from the Attorney General and the Deputy Attorney General constitute "direction" of the litigation.  *Id.*  Because of this area of disagreement, we announce our understanding of the meaning of the statute.

[¶36]  In our opinion, although the Executive Branch may choose to seek the advice of the Attorney General or members of her office in managing the costs of litigation, and the Attorney General may provide such advice as she deems appropriate, no such advice is a prerequisite to continued private representation. Once the Attorney General has initially authorized the Executive Branch to employ private counsel and has taken an opposing position in litigation, authorization for the continued representation of the Executive Branch by private counsel is not required.  Simply put, it is our opinion that the Attorney General cannot formally

---

[5]  In response to the question of whether the Attorney General "has the authority to cap or otherwise limit the funds that the Governor can spend in litigation" when the Attorney General has declined to represent the agency and is participating in the proceeding as an opponent, the Assistant Attorney General who presented oral argument stated, "If it were going to restrain what the private counsel could do to advance that argument, no, but that's not what's been attempted here . . . ."

oppose the Executive Branch's litigation position and, at the same time, direct the Executive Branch's litigation through fiscal or other periodic review of the Executive Branch's private counsel. *See id.*

[¶37] Thus, in our opinion, the answer to Question Two is "No." When the Attorney General has declined to represent the Executive Branch and has taken a contrary litigation position, the Attorney General is no longer directing the litigation of the Executive Branch. *See id.* Neither Maine's Constitution nor its statutes or common law require or authorize the Attorney General to manage or direct the Executive Branch's litigation once the Attorney General has authorized the Branch to employ private counsel and has taken an opposing position in the litigation.

[¶38] We offer this advisory opinion to enable the Governor and all State actors involved to continue to conduct themselves in the interests of the people of Maine, consistent with the Maine Constitution, statutes, and common law.

Signed: March 10, 2015

For the Justices,

/s/
LEIGH I. SAUFLEY
Chief Justice

DONALD G. ALEXANDER
ANDREW M. MEAD
ELLEN A. GORMAN
JOSEPH M. JABAR
Associate Justices

**On the briefs:**

Cynthia Montgomery, Esq., Holly Lusk, Esq., Hancock Fenton, Esq., and Chase Martin, Esq., Office of the Governor, Augusta, for Governor Paul R. LePage

Janet T. Mills, Attorney General, Linda M. Pistner, Chief Dep. Atty. Gen., and Phyllis Gardiner, Asst. Atty. Gen., Office of the Attorney General, Augusta, for Attorney General Janet T. Mills

Peter J. Brann, Esq., Brann & Isaacson, Lewiston

Lise McLain of Gilead, Dorothy Lafortune of Biddeford, and Phillip Merletti of Lee

Audrey Spence of Portland

**At oral argument:**

Holly Lusk, Esq., for Governor Paul R. LePage

Phyllis Gardiner, Asst. Atty. Gen., for Attorney General Janet T. Mills