STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
Doc. No. CV-17-95

GOVERNOR PAUL R. LEPAGE, )
)
Plaintiff )
)
v. )
)
ATTORNEY GENERAL )
JANET T. MILLS, )
)
Defendant )

**ORDER ON DEFENDANT'S
MOTION TO STAY DISCOVERY AND
MOTION TO DISMISS**

Before the Court are Defendant's Motion to Stay Discovery and Motion to Dismiss.

Plaintiff Governor Paul LePage is represented by Attorneys Bryan Dench and Amy Dieterich.

Defendant Attorney General Mills is represented by Assistant Attorneys General Thomas

Knowlton and Jonathan Bolton.

I.      Background

President Donald Trump has issued two Executive Orders concerning immigration to the

United States in early 2017: EO13769 and EO13780. EO13769 was issued on January 27, 2017

and is the subject of a pending lawsuit titled *Washington v. Trump*. (Pl.'s Compl. ¶ 11.) Attorney

General Mills publicly opposed Executive Order EO13769 and joined an amicus brief filed in

opposition to the Executive Order in *Washington v. Trump*. (Pl.'s Compl. ¶ 12.) Governor

LePage claims to have sought the Attorney General's approval to file an amicus brief in in

support of EO13769 and that the Attorney General prevented such a filing "by delay and

obstruction". (Pl.'s Compl. ¶ 13).

1

President Trump issued his second Executive Order, EO13780, on March 6, 2017. (Pl.'s Compl. ¶ 15). Shortly thereafter, an action was filed in Hawaii seeking to enjoin the EO13780. On March 14, 2017, the Governor sent the Attorney General a letter asking that the Attorney General provide representation to the Governor in order to file an amicus brief in support of EO13780, or that her office provide the funds for the Governor to seek outside counsel to represent him. (Pl.'s Compl. ¶¶ 15, 16).

On March 15, 2017, Deputy Attorney General Gardiner responded by letter, providing two options for the Governor if he chose to become involved in litigation concerning EO13780: first, join an amicus brief prepared by another party; second, retain outside counsel assuming that the fees for the outside counsel would be paid by the Governor's office and that the outside counsel be properly admitted to practice law and carry malpractice insurance. (Pl.'s Compl. ¶ 18.)

On March 17, 2017, the Governor responded by letter, objecting to the March 15th letter from the Office of the Attorney General for failing to address the Governor's request that she represent the Governor and for conditioning her approval of the hiring of outside counsel. (Pl.'s Compl. ¶ 19). The Governor further wrote that because in the past the Attorney General had paid outside counsel from the Attorney General's budget, the Governor expected that the Attorney General would cover the cost of any lawyer he should hire to represent him in this matter. *Id.*

Deputy Attorney General Gardiner responded on March 20, 2017 confirming that the Attorney General did decline to provide representation in this matter. She also stated her belief that the requirement that any outside counsel must be properly licensed to practice law did not amount to dictating terms of the engagement of outside counsel. Finally, she wrote that she was

2

not aware of any prior instance in which the Attorney General paid for outside counsel to be retained by the Executive Branch. (Pl.'s Compl. ¶ 20.)

On June 1, 2017, President Trump filed a Petition for Writ of Certiorari with the United States Supreme Court seeking review of the Fourth Circuit decision in *Trump v. IRAP, et al.* upholding a preliminary injunction barring enforcement of EO13780. (Pl.'s Compl. ¶ 21). On June 2, 2017, the Governor sent a letter to the Attorney General again seeking the Attorney General's representation in filing an amicus brief, or alternatively seeking approval to hire outside counsel to be paid for by the Attorney General's office. Deputy Attorney General Gardiner responded by letter on June 5, 2017, authorizing the Governor to hire outside counsel to be paid by the Governor.

This case was brought on May 1, 2017 by the Governor seeking an order:

1. Declaring that if the Attorney General refuses to represent the Governor of the State when requested to do so in matters properly within the scope of Governor's executive power under the Constitution of Maine, the Attorney General must authorize the Governor to retain independent counsel without purporting to impose constraints or limitations on the scope of the Governor's representation by such Counsel;
2. Declaring that when the Governor so retains outside counsel, because this relieves the Attorney General of the performance of his or her duty to represent the Governor, the costs of engaging the outside attorney must be paid out of the appropriation for the Attorney General; and
3. Making such further declaration or granting such further relief as the Court may determine.

The Governor sought amendment of his complaint on June 8, 2017. Leave of Court was granted. The Attorney General now moves the Court to stay discovery and dismiss the action.[1]

_____

[1] In a letter to the Court filed on September 26, 2017, the Governor asks the Court to take judicial notice of a Complaint for Declaratory and Injunctive Relief filed in the U.S. District Court for the Northern District of California, brought by the named plaintiffs State of California, State of Maine, State of Maryland and State of Minnesota against the U.S. Department of

3

II.    Motion to Stay Discovery

The Attorney General has moved the Court to stay discovery pending its determination of her Motion to Dismiss. Because the Governor has failed to articulate how discovery would assist the Court in the purely legal questions presented by the Attorney General's Motion to Dismiss, including questions of jurisdiction, mootness, and separation of powers, the Court grants the Attorney General's Motion.

III.    Motion to Dismiss - Standard of Review

a.    12(b)(1)

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction. M.R. Civ. P. 12(b)(1). "When a court's jurisdiction is challenged, the plaintiff bears the initial burden of establishing that jurisdiction is proper." *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 8, 861 A.2d 662. The court makes no inferences in favor of the plaintiff, as it does when reviewing a motion to dismiss for failure to state a claim. *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335. The court may rely on material outside the pleadings without converting the motion to a motion for summary judgment. *Gutierrez v. Gutierrez*, 2007 ME 59, ¶ 10, 921 A.2d 153.

---

Homeland Security and the United States of America. This California Complaint was signed by Attorney General Janet T. Mills on behalf of the State of Maine. Additionally, the Governor seeks judicial notice of letter correspondence between the Governor and the Attorney General in response to the California Complaint. Judicial notice is appropriate where the fact sought to be noticed "is not subject to reasonable dispute because it: (1) Is generally known within the trial court's territorial jurisdiction; or (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." M.R. Evid. 201. While the California Complaint is a public record, and as such may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the Plaintiff has failed to represent to the Court how this California Complaint is relevant to the case at hand. Therefore, the Court declines to take judicial notice of either the letters or the California Complaint.

4

b.  12(b)(6)

On review of a motion to dismiss for failure to state a claim, the Court accepts the facts alleged in the complaint as true. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830.  The Court "examine[s] the complaint in the light most favorable to plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Doe v. Graham*, 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting *Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830). "For a court to properly dismiss a claim for failure to state a cause of action, it must appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995)).

IV.     Motion to Dismiss - Discussion

a.  Timeliness

It is the purview of the Superior Court to adjudicate cases and controversies. *Lewiston Daily*, 1999 ME 143, ¶ 12. The Governor has laid out the facts of a current dispute. However, the remedy requested is significantly more general, and it presumes future disputes. The Governor asks the Court to rule that whenever the Governor of the State of Maine requests that the Attorney General of the State of Maine represent him in any matter that is "within the scope of Governor's executive power under the Constitution of Maine" the Attorney General is required to either represent the Governor or authorize the Governor to hire outside counsel to be paid out of legislative appropriations made for the Office of the Attorney General. It is well settled that this Court does not have the authority to generally interpret the law and set forth the rights and

5

duties of the parties without reference to a specific case or controversy. *In re Richards*, 223 A.2d 827, 829 (Me. 1966).

The Court looks to the Governor's pleadings in order to determine whether there is any relief that the Court may grant for the dispute set forth in Governor's Complaint. The Governor adamantly contends that the claim is solely for declaratory relief of the rights and duties of the parties. The Attorney General argues that declaratory judgment is a remedy rather than a cause of action. On that basis, the Attorney General argues that the Governor has not set out an underlying claim upon which declaratory relief may be granted. In *Hodgdon v. Campbell*, the Law Court explained that declaratory judgment, pursuant to the Declaratory Judgment Act, "does not create a new cause of action; its purpose is to provide a more adequate and flexible remedy in cases where jurisdiction already exists." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980) (citations omitted); *see also Thompson v. Glidden*, 445 A.2d 676, 679, (Me. 1982). The Court interprets this to mean that it does not have the authority to grant the Governor's request for declaration of the rights and interests of the parties in a general or hypothetical sense.[2]

---

[2] The Governor seeks an order from this Court requiring, among other things, that the Attorney General may not participate in Court proceedings occurring in the Federal Courts unless it is at the request of the Governor or the Legislature. The Governor's argument is based upon the language found in 5 M.R.S. § 191(3),

> The Attorney General or a deputy, assistant or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of the officers are called into question, in all the courts of the State and in those actions and proceedings before any other tribunal when requested by the Governor or by the Legislature or either House of the Legislature.

5 M.R.S. § 191(3). In *Central Maine Power Co. v. Public Utilities Commission*, the Law Court interpreted the statute to allow the Attorney General to appear in Federal Court without being requested to do so by either the legislature or the Governor. *Central Maine Power Co. v. Public Utilities Com.*, 382 A.2d 302, 315 (Me. 1978). "The Attorney General has responsibility to appear for the State, automatically, whenever the State is a party or is 'interested' in a judicial proceeding. Where, however, the forum is other than judicial -- for example, administrative, as

6

The only language in the Governor's Complaint that suggests an alternate remedy is language claiming that the Attorney General has abused her discretion. The Governor appears to be claiming that the Attorney General has abused her discretion in the manner by which she refused to represent The Governor in the federal litigation concerning the Executive Orders on immigration or to pay for outside counsel. If that is the case, the most appropriate avenue for relief may be an appeal of her determinations. Ostensibly, the proper procedure for an appeal of the Attorney General's decision not to represent the Governor when requested and authorizing the use of outside counsel but refusing the Governor's request for funds to pay such an attorney would be the filing of a petition pursuant to M.R. Civ. P. 80C.

The Governor argues that this action would not appropriately be brought pursuant to M.R. Civ. P. 80C because Rule 80C is a mechanism for "review of final agency action or the failure or refusal of an agency to act brought in the Superior Court pursuant to 5 M.R.S.A. § 11001 et seq., Maine Administrative Procedure Act" and the Attorney General is not an agency. *See* M.R. Civ. P. 80C(a). The Maine Administrative Procedures Act defines agency as "any body of State Government authorized by law to adopt rules, to issue licenses or to take final action in adjudicatory proceedings, including, but not limited to, every authority, board, bureau, commission, department or officer of the State Government so authorized." 5 M.R.S. § 8002(2). The Attorney General is "the executive head of the Department of the Attorney General" and "[t]herefore occupies an office that does not fall within any particular branch of government". *In re Opinion of the Justices*, 2015 ME 27, ¶ 7, 112 A.3d 926.

---

here -- the Attorney General is without responsibility in the absence of an express request from the Governor, the Legislature or either branch thereof." *Id.* The Court does not rule on this issue, but it appears that this issue has previously been decided. The Law Court found in *Central Maine Power Co.* that the Attorney General may appear in Federal Court without the request of the Governor or the Legislature when the State is a party or is interested.

As a caveat to potential review of the action as a M.R. Civ. P. 80C administrative appeal, the Attorney General contends that the Attorney General's March 15 letter issuing the decision that the Attorney General would not represent the Governor and authorizing the Governor to hire and pay for outside counsel is no longer reviewable because it is time barred. A M.R. Civ. P. 80C appeal must be filed by the appellant within 30 days of notice of the decision being appealed. 5 M.R.S. § 110202(3). The Governor filed the Complaint on May 1, 2017, outside of the appeal period. The Court agrees with the Attorney General that this claim should have been brought pursuant to M.R. Civ. P. 80C and concludes that the March 15 letter is time barred.

b. Mootness

The Attorney General moves the Court to dismiss for mootness, arguing that there is no present controversy before the Court. In this case, the deadlines for the amicus briefs in the consolidated *Hawaii v. Trump* and *Trump v. IRAP* matters have passed. Even were the Court to have the authority to order the Attorney General to represent the Governor in filing these briefs, and even were the Court to find that such an order was appropriate, any brief produced could not be timely filed. Therefore, the Attorney General argues that the action is moot.

A case is justiciable if there is a "controversy in which the parties have a current interest in the outcome of the litigation." *In re Christopher H.*, 2011 ME 13, ¶ 11, 12 A.3d 64. A case is not justiciable where there is no specific relief which the court may order. *Lewiston Daily Sun,* 1999 ME 143, ¶13. There are exceptions to the mootness doctrine, allowing for review of the merits of otherwise moot cases, where:

> (1) Sufficient collateral consequences will result from the determination of the questions presented so as to justify relief;
> (2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and the public we may address; or
> (3) the issues are capable of repetition but evade review because of their fleeting

8

or determinate nature.

*Id.* at ¶ 17.

In this case, there is no live controversy raised in the Governor's complaint in which the parties have a current interest in the outcome. The deadlines to file the amicus briefs the Governor sought representation to file have clearly passed. The United States Supreme Court consolidated *Hawaii v. Trump* with *Trump v. IRAP* and granted certiorari for *Trump v. IRAP*. Pursuant to Rule 37(3)(a) of the Supreme Court Rules, amicus briefs "shall be submitted within 7 days after the brief for the party supported is filed, or if in support of neither party, within 7 days after the time allowed for filing the petitioner's or appellant's brief. Motions to extend the time for filing an amicus curiae brief will not be entertained." Sup. Ct. R. 37(3)(a). President Trump's brief was filed on August 10, 2017. All amicus briefs in support of President Trump's position were due August 17, 2017. Furthermore, since the date of oral argument on this motion, the United States Supreme Court dismissed *Trump v. IRAP* for mootness. Because the deadline has passed, and the case dismissed, there would be no practical effect of the Court's granting relief. Therefore, the case is moot.

The Governor urges the Court to find that the facts of this case meet the requirements of the third exception to the mootness doctrine: "the issues are capable of repetition but evade review because of their fleeting or determinate nature." *Lewiston Daily Sun,* 1999 ME 143, ¶17. The Governor argues that it is likely that at some point the Attorney General will again decline the Governor's request for legal representation and that the Attorney General should not be able to evade review by causing delay. The Attorney General argues that while it is possible that the Attorney General will again decline the Governor's request for legal representation, such situations do not evade review. Court deadlines are known sufficiently far in advance to allow

9

for necessary litigation. The Court agrees with the Attorney General that while the issues before the Court are capable of repetition, they do not evade review within the meaning of the exception. The Court finds that the case is moot, and that no exception to the mootness doctrine applies.

      c. Separation of Powers

Even were the Court to find the matter not to be moot, or find that the case falls into an exception to the mootness doctrine, the Court fundamentally believes that the doctrine of separation of powers prohibits the Court from granting the Governor's requested relief. It is clear that the Governor is seeking a Court order requiring the Attorney General to pay for the Governor's legal fees in those cases where the Attorney General declines the Governor's request for her representation. The Court does not have jurisdiction to issue such an order.

The Maine Constitution lays out the three branches of government: legislative, executive, and judicial, and states that "[n]o person or persons, belonging to one of these [Branches], shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted." Me. Const. art. III, § 2. As the Law Court opined earlier this year, "The separation of powers doctrine thereby prohibits any of the three Branches of government from exercising the powers relegated to either of the other two Branches." *Opinion of the Justices,* 2017 ME 100, ¶ 13, citing *Bar Harbor Banking & Tr. Co. v. Alexander,* 411 A.2d 74, 77 (Me. 1980). In *State v. Hunter,* the Law Court emphasized the strength of the doctrine of separation of powers as found in the Maine Constitution, noting that "the separation of governmental powers mandated by the Maine Constitution is much more rigorous than the same principle as applied to the federal government." *State v. Hunter,* 447 A.2d 797, 799 (Me. 1982).

10

The Court concludes that this doctrine applies to the question presented of whether the Attorney General should be compelled to pay the litigation costs of the executive branch if she chooses not to provide representation. Appropriation and budgeting are powers given exclusively to the legislative branch by the Maine Constitution. Me. Const. art. IX, § 8 (1819). If the Court were to put requirements on the legislatively appropriated budget of the Office of the Attorney General, the Court would essentially be appropriating funds from the Office of the Attorney General and redistributing them to the Executive Branch. Had the Legislature intended to provide funds for the Governor to conduct the litigation he is clearly permitted to conduct in these cases, given the Attorney General's position, it could have done so. Going forward, it is well within the Legislature's powers to do just that. However, any order from this Court requiring that "the costs of engaging the outside attorney must be paid out of the appropriation for the Attorney General" under these circumstances would violate the Maine Constitution.

V.     Conclusion

For the above stated reasons, the Court GRANTS Defendant's Motion to Stay Discovery and Defendant's Motion to Dismiss.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE:    10/16/17

**Michaela Murphy**
**Justice, Superior Court**

11